Argued and submitted July 9, 1991, decision of the Court of Appeals reversed; judgment of the circuit court affirmed June 4, 1993

Albert BUCHLER,
Personal Representative for
the Estate of Beverly A. Buchler, Deceased,
*Respondent on Review,*

*v.*

STATE OF OREGON,
by and through the
OREGON CORRECTIONS DIVISION;
Oregon Department of Forestry,
*Petitioners on Review,*

*and*

COUNTY OF TILLAMOOK;
David Wilson,
Sheriff of Tillamook County,
*Defendants.*

(CC 87-2012)

Charles A. SEELING,
*Respondent on Review,*

*v.*

STATE OF OREGON,
by and through the
OREGON CORRECTIONS DIVISION;
Oregon Department of Forestry,
*Petitioners on Review,*

*and*

COUNTY OF TILLAMOOK;
David Wilson,
Sheriff of Tillamook County;
and Marjorie Miller,
*Defendants.*

(CC 87-2024; CA A60439; SC S37882)

853 P2d 798

Rives Kistler, Assistant Attorney General, Salem, argued the cause for petitioners on review. With him on the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Ted E. Runstein, Portland, argued the cause for respondents on review. With him on the response were Dana L. Barnes, Portland, and John Tuthill, Tillamook.

FADELEY, J.

Peterson, J., concurred and filed an opinion, in which Gillette and Graber, JJ., joined.

Unis, J., specially concurred and filed an opinion.

## FADELEY, J.

In these negligence actions, plaintiffs seek damages from the state for harm caused by a state prisoner who escaped from custody. The prisoner was a convicted felon, placed by the Corrections Division as a member of a work crew of a forest camp in a remote rural area. He left the work site without permission by taking and driving away the state's van, in which the ignition keys had been left by the crew supervisor. Defendant state advised the Tillamook County Sheriff and the Oregon State Police of the escape.

Two days later and 50 miles from the point of escape in the van, the prisoner shot two people with a gun that he had stolen in a burglary of his mother's residence, which was near the place of the shootings. One of his victims died from that gunshot. The prisoner's prior record included the property crimes of unauthorized use of motor vehicles and burglary but not any crimes of violence. The record in this case does not show that defendant[1] had any knowledge that the prisoner had previously caused bodily harm to anyone, although defendant was aware that the prisoner may have had a "violent temper" during childhood and that he had a long-standing drug problem.

Plaintiffs' complaints alleged that defendant was negligent as follows:

— in permitting the prisoner to escape;

— in failing to recapture the prisoner; and

— in failing to warn the public in general and particularly persons, such as plaintiffs, located near the home of the mother of that prisoner, that the prisoner had escaped.

No contention is made that defendant had knowledge of the location of the mother's home or of any burglary there. No dispute arises concerning whether defendant was unaware of those facts.

---

[1] Named defendants, Tillamook County, its sheriff, David Wilson, and the prisoner's mother, Marjorie Miller, were separately dismissed from the case. No appeal was taken as to them. When we refer to defendant herein, we mean the state. When we refer to plaintiffs, we mean both Charles Seeling and the estate of the deceased, Beverly Buchler.

The trial judge granted the defendant's motion for summary judgment, opining that there was no issue of fact for a jury to consider. The trial court relied on *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987), to support the idea that the injury inflicted was not within the scope of legal foreseeability and that defendant was not liable. The trial court explained:

> "Here the only connecting link between the escaping prisoner * * * and the plaintiffs * * * is that the two plaintiffs live about a mile away from the home of the prisoner's mother's home which he burglarized to get the gun with which he wounded [one plaintiff] and killed [the other plaintiff's decedent] some two days after the escape. The Court finds that this connection is not sufficient as a matter of law, given that the State of Oregon is not an insurer to all. No special relationship existed between the two plaintiffs and the state prisoner."

The Court of Appeals reversed the summary judgment for defendant. A majority of the Court of Appeals panel held:

(1)    An escaped felon presents a "generalized risk" of harm to anyone contacted by an escaped prisoner on the run;

(2)    all members of the public, including plaintiffs, were endangered by that generalized risk;

(3)    a jury could find that creating the risk by permitting the escape and then failing to warn the public adequately of the escape or to conduct an extensive search for the escaped prisoner was unreasonable, given the magnitude of the risk and the apparent low cost of avoiding it; and,

(4)    a jury could determine that the harm to plaintiffs was a reasonably foreseeable result of defendant's negligence in creating and perpetuating a risk of harm.

The Court of Appeals also held that discretionary immunity was not available to defendant, because the negligent acts and omissions claimed were not policy decisions. *Buchler v. Oregon Corrections Div.*, 104 Or App 547, 803 P2d 733 (1990).

A third member of the Court of Appeals panel joined in the result — reversal of the summary judgment — but did

so on the basis that a "special relationship" created an obligation of defendant to protect the public. That "relationship" and obligation arose, in the opinion of the third member, because defendant had control of the prisoner before his escape, even though the prisoner previously had not demonstrated highly dangerous conduct.

However, the Court of Appeals upheld the trial court in another respect. It held that "it was proper to strike the allegations relating to the [escaped prisoner's] mother's home" because "[p]laintiffs did not offer any evidence that defendant knew or should have known that [the escaped prisoner's] mother lived in the vicinity of the work camp." *Buchler v. Oregon Corrections Div., supra*, 104 Or App at 552 n 4.

We reverse the decision of the Court of Appeals and affirm the trial court's summary judgment because the facts established on the motion for summary judgment do not create liability under the scope of a custodian's duty to the public concerning a prisoner who escapes, because no duty to warn arises in the absence of more specific knowledge of the risk of the harm that befell plaintiffs, and also because any negligence of defendant that facilitated the earlier escape did not produce the harm that plaintiffs suffered.

■     The general allegations of the complaint require this court first to analyze whether a special relationship between the plaintiffs and the defendant is alleged to exist due to "a status, a relationship, or a particular conduct that creates, defines or limits the defendant's duty." *Fazzolari v. Portland School Dist. No. 1J, supra*, 303 Or at 19. It is only when there is no such special relationship, status, or conduct that *Fazzolari's* general foreseeability principle, about which there will be more consideration later in this opinion, comes into play. *Ibid.*

■ ■     There is no special *relationship* between plaintiffs and defendant custodian in this case, within the meaning of that term in *Fazzolari*. That case refers to a relationship between a plaintiff and a defendant, like the relationship between school officials and a student required to attend, or between a landlord and a tenant. If plaintiffs had been other prisoners, or even perhaps guards, injured in the course of an

escape, that sort of relationship might perhaps be made out, but that is not this case.[2] *See Fazzolari v. Portland School Dist. No. 1J, supra,* 303 Or at 17 (where the "special relationship" was between defendants who were school officials and plaintiff-student who was compelled to attend defendants' school). However, there is a *status* occupied by defendant that raises duties of care. Defendant was custodian of a prisoner.

In *Park v. Hoffard,* 315 Or 624, 631-32, 847 P2d 852 (1993), this court looked to law related to the status of a landlord and the special relationship between a landlord and a tenant to define the scope of liability for harm occurring outside the rented property but which is related to the tenant's conduct on the property. That case involved a known dangerous biting dog that escaped repeatedly from the rental premises. The court held that Restatement (Second) of Torts section 379A (1965) "states an appropriate rule with respect to a landlord's liability for physical harm to persons off the rental property." 315 Or at 632. In the present case, we first consider liability arising from defendant's status as jailer because the parties invoke that status — of a jailer having custody of a prisoner — which is covered in section 319, Restatement (Second) of Torts (1965).

*It appears that liability under section 319 is an exception to a general rule of non-liability for the conduct of others.* Section 315 of the Restatement (Second) of Torts (1965) states the general principle that "[t]here is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another" *unless* there is a special relationship between the actor (defendant) and an injured party (plaintiff). That rule of common law described in section 315 applies in this case to support exclusion of liability because the actor is the defendant and plaintiffs are members of the general public. Defendant's status or "relationship" is that of jailer to the prisoner. The jailer has no

---

[2] The relationship between a plaintiff and a defendant is important in Oregon tort law under the cases discussed in the text. The separate concept of relationship between a defendant and the person or instrumentality causing or threatening to cause a specific harm may also raise duties to third persons as, for example, the duty of a landlord to a tenant's invitee. The duties to the third party arise out of the defendant's status, not from a special relationship between the third party as plaintiff and a defendant. In this case, the relevant status is that of a jailer having custody of a prisoner.

special relationship to members of the public in general. The commentary to section 315 states that other more specific rules may also apply, depending on various fact patterns that may exist, and lists other Restatement sections covering those other fact patterns. None of the sections describing a duty arising out of a special relationship between the actor and the injured party applies in this case, where defendant is the state and plaintiffs are simply members of the general public.

Section 319 describes an exception to the rule in section 315 declaring liability for one in the status of a jailer. Section 319 states a duty that may exist between a defendant jailer having custody of a prisoner and third persons whom the prisoner may harm. That section provides:

> "Duty of Those in Charge of Person Having Dangerous Propensities
>
> "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

This court has not previously expressed whether Oregon law is consonant with section 319.[3] The majority of jurisdictions appear to apply common-law principles that are like section 319 in these types of cases. Many jurisdictions simply adopt Restatement section 319, by reference, as the law of that state. *E.g., Robertson v. Wentz*, 187 Cal App 3d 1281, 232 Cal Rptr 634 (1st Dist 1986); *Perreira v. State*, 768 P2d 1198 (Colo 1989). We hold that the common-law rule, delineated by section 319 to define a custodian's duty in modern times, is the law of this state as well. That law defines a custodian's duty concerning a prisoner in Oregon. *See Bellikka v. Green*, 306 Or 630, 639-47, 762 P2d 997 (1988) (analyzing the continuing applicability of common-law rules of landlord liability).

Applying the rule, as it is stated in section 319, to the present case, there is no dispute that defendant took "charge of" the prisoner. Therefore, the controlling question in this

---

[3] *Christensen v. Epley*, 287 Or 539, 552, 573, 601 P2d 1216 (1979), was affirmed by an equally divided court on the relevant issue.

case is whether defendant knew or should have known that the prisoner was "likely to cause bodily harm to others if not controlled."

The first definition of "likely" is "probably or apparently destined." The Random House Dictionary of the English Language 1114 (2d ed 1987). As noted previously, the prisoner's criminal record only concerned property crimes, not acts of violence. We express no opinion whether a reasonable jury conceivably could conclude that a prisoner with a non-violent history would be "likely to cause bodily harm" during the stress of the actual escape from custody itself but that is not what happened here. The death and injuries occurred two days after the initial escape was completely effectuated. We do not think that a childhood temper problem or even long drug use, without more, permits a reasonable juror to infer that this prisoner was "likely to cause bodily harm to others."[4] It is not possible for a reasonable person to find from this record that a custodian would have known that this particular prisoner was "likely to cause bodily harm" of the kind that befell plaintiffs two days after his escape. The tragic death and injuries were not legally foreseeable results of this particular prisoner's escape. They are not risks unreasonably created by that escape, nor did they occur because of violation by defendant of any duty arising out of any special relationship between the plaintiffs and the defendant or defendant's status as the prisoner's jailer.

That does not end our consideration of this case, however. Two claims of general negligence raised by plaintiffs are not treated in the Restatement sections concerning liability based on the status of custodian of another person. One is the general negligence claim that leaving the keys in the vehicle facilitated infliction of the later harms to plaintiffs. In this claim, which does rest on defendant's status as a jailer, we must determine whether plaintiffs' harms were caused by the asserted negligence. Under the second claim, we must determine whether general negligence principles related to

---

[4] *See* section 302B, Restatement (Second) of Torts (1965), illustration 16 at pages 93-94 (no negligence of custodian where forgery convict escapes from work camp and assaults plaintiff third-party driver, at knife point, to obtain third party's vehicle).

failure to warn plaintiffs of the escape should prevent granting a motion for summary judgment against plaintiffs on the ground that facts related to the legally cognizable claim of negligence and causation of harm are in dispute and thus must be resolved by a jury.

■   The risk of harm that we analyze in a failure-to-warn case is not the hazard itself — *i.e.*, not the hazard of escape of a prisoner or the prisoner himself. It is, instead, the chance that someone will predictably be exposed to danger if no warning is made.

Six years ago, this court decided three cases that have provided much of the recent basis for discussion of negligence law in Oregon: *Fazzolari v. Portland School Dist. No. 1J, supra*; *Kimbler v. Stillwell*, 303 Or 23, 734 P2d 1344 (1987); and *Donaca v. Curry Co.*, 303 Or 30, 734 P2d 1339 (1987). The shorthand expression for the group is the name of the first case, *Fazzolari*. As is typical, both sides in the present controversy cite those cases.

The actual holding in *Fazzolari* was based on a special relationship between school officials and students required to attend that school. However, people usually refer to the *Fazzolari* doctrine when they mean to discuss the *dicta* in that case concerning negligence claims based on foreseeability of harm alone. In the remaining two cases, this court upheld the sufficiency of allegations in a complaint against ORCP 21 A(8) challenges that insufficient facts were alleged to establish liability as a matter of law. *Donaca* was a garden-variety holding that a county, responsible for road maintenance, may have a duty to remove vegetation at an intersection of a county and private road when the vegetation prevented drivers from seeing other vehicles on the intersecting road. *Donaca v. Curry Co., supra*. In the third of the group of cases, *Kimbler v. Stillwell, supra*, the court held that a G I Joe's store owner could be held liable for injuries inflicted with guns stolen from the store by third parties. In *Kimbler*, this court said that the store owner could foresee that criminals might steal the guns and inflict harm with them.[5] 303 Or at 29.

---

[5] The guns that inflicted harm in this case were not stolen from defendant here, but rather from the escaped prisoner's mother's house. As noted, she is not presently a defendant, nor is there evidence that defendant had knowledge concerning her house or the theft of guns from it.

The message of part of the discussion in *Fazzolari* is quite simple. "Duty" and "foreseeability" are each but verbal tools used in explanatory reasoning to answer the legal question, "Should defendant pay for plaintiff's harm?" In either formulation, the use to which courts and litigants put the question remains the same. When tested before trial, do the allegations of a complaint state facts that, under the law, will allow plaintiff to recover from the named defendant? When tested after a trial, does the evidence introduced reasonably permit findings of fact on which the law will allow the plaintiff to recover from the defendant? Either formulation — duty or foreseeability — is a method of describing how the law limits the circumstances or conditions under which one member of society may expect another to pay for a harm suffered. Within those limits, the jury or other factfinder may determine whether to award damages and in what amount. Outside those limits, the judge determines as a matter of law whether the facts alleged or the evidence of them is sufficient to support relief.

*Fazzolari, Donaca,* and *Kimbler* are viewed by some as *erasing* the word "duty" from the lexicon of negligence law and replacing it with aspects of the word "foreseeability." In this view, *Fazzolari* rolled up into the one concept of foreseeability[6] the judicial answer to why a jury may require a defendant to pay a plaintiff's damages, a question formerly addressed by the separate inquiries into duty, breach, and causation of legally cognizable harm.

In *Kimbler,* G I Joe's, Inc., kept, in public view, guns and ammunition for sale. At night, the store secured the guns by locking the store. A thief broke in and stole a gun and ammunition. The thief transported the gun to a different location and shot the plaintiff's decedent. In a wrongful death

---

[6] In *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 606, 469 P2d 783 (1970), the court erased "proximate cause" from the lexicon in favor of "foreseeability." Causation was, nonetheless, still required in that a plaintiff's harm must result from a defendant's negligent conduct.

In *Stewart,* the defendant negligently started a fire that was burning building "A." The fire threatened adjacent buildings. The plaintiff, working on the roof of building "B" to fight the fire in "A," stepped through an obscured glass skylight and was injured. The court held that the plaintiff's harm resulted from the negligence of the defendant. Foreseeability of a fire being fought from the roof of an adjacent building, and of some risk of danger from being on the roof, equaled liability where the defendant's negligence started the fire.

action, this court held that the complaint stated a tort claim when it alleged that it was foreseeable in the circumstances for thieves to steal guns and to shoot people with them. The complaint alleged that defendant negligently failed to prevent this foreseeable harm because he did not employ better, more adequate methods of preventing the theft of the guns and ammunition. The court reasoned that failure,[7] as alleged, to employ more effective methods of preventing theft "facilitated" the foreseeable harm and held, on that basis, that actionable negligence was pleaded. 303 Or at 27-28.

In *Kimbler v. Stillwell, supra,* 303 Or at 27-28, the court said:

"The fact that a plaintiff's injury was inflicted by the intentional, even criminal, act of a third person does not · foreclose liability if such an act was a foreseeable risk facilitated by the defendant's alleged negligence."

*Kimbler's* rule that "facilitated" is enough does not build on the concept that the store owner's lax security was an *invitation* to third parties to engage in potentially dangerous wrongdoing. Nor do the facts of *Kimbler* bring that case within the ambit of traditional negligence liability of a defendant who places another person in peril during the time when the defendant was under a duty or responsibility to provide services to the plaintiff with safety. Neither does "facilitation" explain, within traditional theory, liability of a defendant in control of a dangerous instrumentality, who permits the dangerous instrumentality to escape control and inflict harm.

*Kimbler* decided that the facts alleged were sufficient to withstand an ORCP 21 A(8) motion to dismiss and appeared to compare its decision with a purported rule, in existence before the adoption of the Oregon Rules of Civil Procedure. That prior rule held that an allegation that an act was done "negligently" was sufficient, because any sort of factual proof could come in to support that general allegation.

---

[7] The negligence allegations included that "lack of" security measures made the guns "easy targets for theft." When tested by an ORCP 21 A(8) motion, the court discussed the case in terms of "facilitating" plaintiff's harm at the hands of the criminal firing a gun stolen from defendant because the gun was relatively easy to steal, albeit behind locked doors, and held the complaint's allegations were sufficient to survive the motion.

303 Or at 28-29. Plaintiff in *Kimbler* had alleged that guns are dangerous, that thieves steal them, that "as a matter of common knowledge" stolen firearms are used to commit other crimes against third parties, and that the defendant store failed to take additional precautions to prevent theft of the guns with which plaintiff was later and elsewhere harmed.

Because the store is, in that formulation, being charged with responsibility for all intervening intentional criminal conduct that might conceivably occur, we think the breadth of *Kimbler's* holding cannot be supported by a foreseeability analysis that requires that a defendant, to be liable, must have *unreasonably* created the risk of the sort of harm to plaintiff that befell him. Certainly it cannot be supported by such analysis on a motion for summary judgment, where there are no claimed facts showing defendant's knowledge of unreasonable risk of danger to the particular plaintiffs involved. In the instant case, there also is no evidence to show any such knowledge by defendant.[8]

■ ■ We decline to apply the "facilitation" rationale of *Kimbler v. Stillwell, supra,* to this case. An intervening criminal instrumentality caused the harm and created the risk in that case, as in the present case. While it is generally foreseeable that criminals may commit crimes and that prisoners may escape and engage in criminal activity while at large, that level of foreseeability does not make the criminal's acts the legal responsibility of everyone who may have contributed in some way to the criminal opportunity. In other words, in our society it is foreseeable that crimes may occur and that the criminals perpetrating them may cause harm. Thus, in a general sense, it is foreseeable that anyone whose conduct may in any way facilitate the criminal in committing the crime has played some part in the resulting harm. But mere "facilitation" of an unintended adverse result, where intervening intentional criminality of another person is the

---

[8] Some have read a message into the *Fazzolari* trilogy that others do not find there. The assumed message was that all negligence claims based on general foreseeability of a plaintiff's harm would reach the jury. We do not think that the trilogy of decisions supports that reading of them. Our treatment of the *Kimbler* leg of the trilogy in this case should dispel any lingering doubts on that score.

harm-producing force, does not cause the harm so as to support liability for it.[9]

Moreover, a criminal may employ means, other than those that a defendant unwittingly facilitated, to place him or herself in a position to inflict the same harm. This is not a case where the vehicle, with keys left in it, was the mechanism by which the escaped prisoner inflicted the harm; rather, it was merely one of the means by which an escape was possible and, even at that, one occurring in a situation where other means of escape were equally possible. For example, in this case, the prisoner could have escaped from custody on foot and, likewise, arrived at his mother's house after a few days, stolen the gun, and caused the very same harm of which plaintiffs complain. In *Kimbler,* the store could have provided the gun by a legitimate sale and "facilitated" the harm to the same degree as it did by keeping guns in a place where a determined person could steal them.

*Kimbler* fits within two criteria that this court has identified as sufficient bases for overruling a precedent in *Heino v. Harper*, 306 Or 347, 373-74, 759 P2d 253 (1988). *Heino* lists as criteria that (1) the "earlier case was inadequately considered or wrong when it was decided"; and (2) the "surrounding statutory law or regulations have altered some essential legal element assumed in the earlier case." *Id.* at 373 (quoting from *G.L. v. Kaiser Foundation Hospitals, Inc.,* 306 Or 54, 59, 757 P2d 1347 (1988)). A change in rules of pleading between the time of decision in *Kimbler* and the earlier negligence pleading cases that it discusses was inadequately considered in *Kimbler,* making the result declared there erroneous. The reasoning in *Kimbler* appears to have been based on an assumed rule of law that no longer existed. That rule concerned sufficiency of a negligence pleading when tested by demurrer. Before legislative adoption of the ORCP, this court assumed that any state of facts might be proved to support a bare allegation that a defendant acted negligently. *Mezyk v. National Repossessions,* 241 Or 333, 405 P2d 840

---

[9] *See* Note, *Police Liability for Negligent Failure to Prevent Crime*, 94 Harv L Rev 821-824, 827 (1981) (courts do not recognize any general duty to prevent crime, although a duty based on a special relationship with the police has been recognized); *Nearing v. Weaver*, 295 Or 702, 707, 670 P2d 137 (1983) (recognizing right of action for damages based on statute imposing a specific duty on police for the benefit of persons previously identified by court order).

(1965). However, a fact-pleading requirement was enacted by the ORCP. As this court explained in *Moore v. Willis*, 307 Or 254, 258, 767 P2d 62 (1988):

> "Before the adoption of the Oregon Rules of Civil Procedure, this court had held that a plaintiff need only to plead that the defendant acted negligently. Pleading 'negligence' adequately stated the foreseeability element. *See, e.g., McEvoy v. Helikson*, 277 Or 781, 787, 562 P2d 540 (1977). *But see Reynolds v. Nichols*, 276 Or 597, 600-01, 556 P2d 102 (1976) (holding that a complaint alleging that the defendants were negligent did not adequately allege foreseeability). Recent decisions, however, consistently have required more than mere allegations of 'negligence.' "

The ORCP, when adopted, brought additional new tools for judging sufficiency of a party's case. ORCP 47 provided for summary judgment motions and announced a standard that a party's case must meet, not provided by the previous "code pleading" rules, for assessing factual sufficiency of a party's case.

*Kimbler* did not analyze the facts pleaded to see how they fit within the requirement that the defendant's "facilitation" rise to the level of unreasonably creating the risk of the sort of harm that befell plaintiff, where the allegation was that guns were locked up too lightly. *Kimbler* does not analyze the sufficiency of the facts alleged in that complaint by reference to the requirements of ORCP 18 A and 21 A(8). Instead, it compares the allegations of the complaint in *Kimbler* with allegations in complaints upheld against demurrers in pre-ORCP cases and finds *Kimbler's* allegations "substantially more concrete" than those in the old demurrer cases. 303 Or at 29. That was neither the appropriate comparison nor the proper standard for testing sufficiency of the facts pleaded. Nor did it provide a methodology for evaluating whether defendant's conduct unreasonably contributed to the risk. *Kimbler* should not be considered as precedent in the future.

Whatever may be the utility of a generalized foreseeability principle — or its alter ego, the general duty principle — in preventing harm to society's members by modifying conduct so that harm is avoided, the current state of tort law does not reach so far as plaintiffs would have it reach in this

case. As a matter of law, the harm that actually occurred did not result from any risk of harm to others that was unreasonably created by leaving the keys in the van; summary judgment was appropriate for that factual allegation of negligence.[10]

We next turn to the question whether, as a matter of general negligence based on foreseeability of the risk of harm, liability may be predicated on either of the allegations of defendant's failure to warn, including failure to warn people in the area of the escaped prisoner's mother's home. Those allegations differ from the allegations relating to permitting the prisoner to escape in the van, because the failure to warn is alleged to be directly linked to plaintiffs' presence in the woods where they were shot by the escaped prisoner. Plaintiffs alleged that the victims would *not* have ventured out into the woods had they been warned that an escaped criminal might be in the vicinity.

The failure-to-warn allegations are of two types. One rests on a specific duty to warn those persons, including plaintiffs in this case, in the vicinity of the prisoner's mother's home. The other invokes a more general duty to warn the public that an inmate had escaped from the prison camp work site. We will deal first with the specific allegation of failure to warn that was correctly identified by the Court of Appeals and the trial court as failing to present a disputed issue of fact as is necessary to prevent disposition of the case by summary judgment. ORCP 47 C.

---

[10] ORCP 47 C, in relevant part, provides:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

ORCP 47 D, in relevant part, provides:

"*[S]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence.* * * * *When a motion* for summary judgment *is* made and *supported as provided in this rule* an adverse party may not rest upon the mere allegations or denials of that party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this section, *must set forth specific facts showing that there is a genuine issue as to any material fact for trial.* If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against such party." (Emphasis added.)

■      Plaintiffs do not present any evidence, in the documents attached to their response to the motion for summary judgment, that would show *why* defendant knew or should have known that the prisoner would be near his mother's home, or even that defendant was aware that the prisoner's mother lived in the area, much less that a gun had been stolen in a burglary there. This omission is fatal to plaintiffs' contentions concerning failure-to-warn those in the area of mother's home. *See Moore v. Willis, supra*, 307 Or at 260-61 (complaint must allege facts from which factfinder could determine that defendants had reason to know that violence could result from underage drinking).

■      Plaintiffs' reliance on *Fuhrer v. Gearhart By The Sea, Inc.*, 306 Or 434, 760 P2d 874 (1988), to uphold a duty to warn is misplaced. That case, which affirmed dismissal of a complaint alleging an innkeeper's failure to warn his guests of dangerous surf and tide conditions on an adjacent ocean beach, supports the summary judgment granted here on the failure to warn allegations rather than raises any question about the appropriateness of granting summary judgment. The *Fuhrer* court explained:

> "The risk in a failure-to-warn case is not the hazard itself, but the chance that someone predictably will be exposed to danger * * * if no warning is made." *Id.* at 438.

This court then held:

> "In the present case, there is no allegation in the complaint that Gearhart knew or should have known of the dangerous condition of the ocean surf.[11] Without knowledge of a dangerous condition or reason to know of the condition, Gearhart could not have foreseen an unreasonable risk of harm. If plaintiff were able to prove all the facts alleged in the complaint, plaintiff would still not have proved one element necessary to recovery, the foreseeability to defendant of an unreasonable risk of harm to persons in plaintiff's position. Even if Gearhart had an affirmative duty to take reasonable steps to warn and protect, the duty would extend only to warn of and protect from knowable risks. Because plaintiff might prove all the facts alleged and still

---

[11] This reasoning applied to the fact-pleading requirement even though the court conceded that general knowledge that the ocean and surf were sometimes dangerous was possessed by all, including defendant oceanside innkeeper.

not be entitled to recover, the complaint was properly dismissed." *Id.* at 441-42.

That requirement and reasoning apply equally where a motion for summary judgment raises the issue whether there are sufficient facts to establish liability. The rule requires a showing in response to the motion. ORCP 47 D. Plaintiffs did not produce evidence that defendant here either knew nor had reason to know of the specific danger presented by the prisoner to plaintiffs. Defendant had no duty to warn in the absence of that knowledge, because it was not reasonably foreseeable that the escapee posed a risk of harm to persons in plaintiffs' position. Defendant promptly advised the appropriate police agencies of the escape. Therefore, the trial court correctly granted summary judgment on the theory of failure to warn, as well as theories of permitting escape and failing to recapture.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

**PETERSON, J.,** concurring.

I concur, but write separately to express concerns about the state of our case law following three 1987 decisions of this court. The majority cites and discusses *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987); *Kimbler v. Stillwell*, 303 Or 23, 734 P2d 1344 (1987); and *Donaca v. Curry Co.*, 303 Or 30, 734 P2d 1339 (1987). The majority disapproves the foreseeability rationale of *Kimbler*, saying: "*Kimbler* should not be considered as precedent in the future." 316 Or at 513. I agree, but write separately to express additional concerns about the *Fazzolari* trilogy.

The Supreme Court of Oregon is a common-law court. In the area of torts, one of its main responsibilities is to formulate and apply common-law rules of conduct. That has been a responsibility of this court since its inception.

Concerning that responsibility, Oliver Wendell Holmes, Jr. (later Justice Holmes of the Supreme Court of the United States), wrote a book in 1881 entitled "The Common Law." On the first page, Mr. Holmes stated:

"The life of the law has not been logic: it has been experience. The felt necessities of the time, the prevalent moral and

political theories, intuitions of public policy, avowed or unconscious, even the prejudices which judges share with their fellow-men, have had a good deal more to do than the syllogism in determining the rules by which men should be governed. The law embodies the story of a nation's development through many centuries, and it cannot be dealt with as if it contained only the axioms and corollaries of a book of mathematics. In order to know what it is, we must know what it has been, and what it tends to become. We must alternately consult history and existing theories of legislation. But the most difficult labor will be to understand the combination of the two into new products at every stage. The substance of the law at any given time pretty nearly corresponds, so far as it goes, with what is then understood to be convenient; but its form and machinery, and the degree to which it is able to work out desired results, depend very much upon its past." O. W. Holmes, Jr., *The Common Law* 1-2 (1881).

Another eminent jurist, New York Court of Appeals Judge Benjamin N. Cardozo (later Justice Cardozo of the Supreme Court of the United States), gave a series of lectures touching on this subject, later published in a book entitled "The Nature of the Judicial Process." Concerning the changing nature of the common law, Judge Cardozo stated:

"Not all the progeny of principles begotten of a judgment survive, however, to maturity. Those that cannot prove their worth and strength by the test of experience are sacrificed mercilessly and thrown into the void. The common law does not work from pre-established truths of universal and inflexible validity to conclusions derived from them deductively. Its method is inductive, and it draws its generalizations from particulars. The process has been admirably stated by Munroe Smith: 'In their effort to give to the social sense of justice articulate expression in rules and in principles, the method of the lawfinding experts has always been experimental. The rules and principles of case law have never been treated as final truths, but as working hypotheses, continually retested in those great laboratories of the law, the courts of justice. Every new case is an experiment; and if the accepted rule which seems applicable yields a result which is felt to be unjust, the rule is reconsidered. It may not be modified at once, for the attempt to do absolute justice in every single case would make the development and maintenance of general rules impossible; but if a rule continues to

work injustice, it will eventually be reformulated. The principles themselves are continually retested; for if the rules derived from a principle do not work well, the principle itself must ultimately be re-examined.' " Benjamin N. Cardozo, *The Nature of the Judicial Process* 22-23 (1921) (quoting Munroe Smith, Jurisprudence 21 (1909)).

Judge Cardozo opined that the common-law process involves continual "retesting and reformulating" of common-law rules, "inch by inch." *Id.* at 24-25.

"There has been a new generalization which, applied to new particulars, yields results more in harmony with past particulars, and, what is still more important, more consistent with the social welfare. This work of modification is gradual. It goes on inch by inch. Its effect must be measured by decades and even centuries. Thus measured, they are seen to have behind them the power and the pressure of the moving glacier." *Id.* at 25.

Judge Cardozo candidly concluded, "Hardly a rule of today but may be matched by its opposite of yesterday." *Id.* at 26.

The beauty and strength of the common-law system is its infinite adaptability to societal change. Recent decisions of this court are illustrative. In *Heino v. Harper*, 306 Or 347, 349-50, 759 P2d 253 (1988), the court abolished interspousal immunity, holding "that the common-law rule of interspousal immunity is no longer available in this state to bar negligence actions between spouses." In *Winn v. Gilroy*, 296 Or 718, 734, 681 P2d 776 (1984), the court abolished parental tort immunity for negligent injury to minor children. Nineteen years earlier, in *Wights v. Staff Jennings*, 241 Or 301, 310, 405 P2d 624 (1965), stating that "it is the function of the judiciary to modify the law of torts to fit the changing needs of society," the court held that a seller of a product may be held strictly liable for injuries to a plaintiff not in privity with the seller.

The development of the common law occurs in an environment in which tensions abound. On occasion, the Legislative Assembly passes laws in response to decisions of this court. Products liability decisions of this court led to the enactment of a series of products liability statutes now found in ORS 30.900 to 30.927. A decision of this court involving an injury to a skier, *Blair v. Mt. Hood Meadows Development*

*Corp.*, 291 Or 293, 630 P2d 827, *modified*, 291 Or 703, 634 P2d 241 (1981), led to the enactment of statutes concerning skiing activities, ORS 30.970 to 30.990.

On the other hand, this court, in deciding common-law issues presented to it, has ascertained public policy by looking to legislative enactments. The legislature is incapable of passing laws that govern every conceivable situation that might arise, however. The common-law court is the institution charged with the formulation and application of rules of governing law in situations not covered by constitution, legislation, or rules.

Common-law courts can err. In *Tarbet v. Green*, 236 Or 361, 388 P2d 468 (1964), in a unanimous opinion, this court held that the plaintiff was a guest passenger under Oregon's guest passenger statute, and not entitled to recover. One year later, in 1965, again in a unanimous opinion involving the same statute and similar facts, the court held that a plaintiff was not a guest passenger and overruled *Tarbet v. Green* because it was "misleading." *Getchell v. Reilly*, 242 Or 263, 267-68, 409 P2d 327 (1965).

The *Fazzolari* trilogy rests on this precept:

"[U]nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff. The role of the court is what it ordinarily is in cases involving the evaluation of particular situations under broad and imprecise standards: to determine whether upon the facts alleged or the evidence presented no reasonable fact-finder could decide one or more elements of liability for one or the other party." *Fazzolari v. Portland School Dist. No. 1J*, *supra*, 303 Or at 17.

The *Fazzolari* trilogy spawned several law review articles. One is by a retired Chief Justice of this court, Kenneth J. O'Connell, *Ruminations on Oregon Negligence Law*, 24 Willamette L Rev 385 (1988). In the same volume is a student note, *The Proper Judicial Role in Negligence Actions: The Fazzolari Trilogy Redefines "Negligence,"* 24 Willamette L Rev 443 (1988). The most recent article is by a

torts professor at the University of Oregon School of Law, Caroline A. Forell, *Replacing Pragmatism and Policy with Analysis and Analogy: Justice Linde's Contribution to Oregon Tort Law*, 70 Or L Rev 815 (1991).

O'Connell, Forell, and the student read the *Fazzolari* trilogy to stand for the proposition that, with some exceptions, *duty* is no longer an element of a plaintiff's common-law negligence claim separate from *foreseeability*. If injury to another is foreseeable, a duty to avoid injury to the other exists.

The *Fazzolari, Kimbler*, and *Donaca* opinions have caused much confusion in the bench and bar. I erred in joining in all the reasoning of those opinions. Generations of lawyers and judges lived with the pre-*Fazzolari* concept of duty/breach/causation with a measure of confidence, confidence born of the certainty that existed under those rules. Even though the post-*Fazzolari* experience is short — but six years — the experience has been long enough to convince me that this court erred in limiting the role of the judge in controlling the submission to a jury of questions concerning foreseeability.

In the pre-*Fazzolari* era, whether a defendant had a duty of care was a question of law for the court. *Allen v. Shiroma/Leathers*, 266 Or 567, 570, 514 P2d 545 (1973); *Dewey v. A.F. Klaveness & Co.*, 233 Or 515, 524, 379 P2d 560 (1963) (O'Connell, J., specially concurring). Justice O'Connell, in his special concurrence in *Dewey*, explained the roles of judge and jury in traditional negligence law:

"[The judge and jury participate in] the formulation of policy as to the circumstances under which a person who causes or contributes to the causing of harm should be required to respond in damages. The court and the jury, each in its own sphere, participate in the formulation of this policy by which the existence and the extent of liability is defined. *The court performs its function in this respect in deciding whether defendant should be regarded as owing a duty in the type of case before it * * *.* The jury in turn decides whether the defendant's conduct meets the minimum standard of reasonable conduct in the community, i.e., the issue of negligence." *Dewey v. A.F. Klaveness & Co., supra*, 233 Or at 524 (emphasis added).

Before *Fazzolari*, the foreseeability test was described by the court in *Stewart v. Jefferson Plywood, Inc.*, 255 Or 603, 609, 469 P2d 783 (1970):

"This idea of limiting liability to that which can be anticipated is formulated into the foreseeability test for negligence, which states that one is negligent only if he, as an ordinary reasonable person, ought *reasonably* to foresee that he will expose another to an unreasonable risk of harm." (Emphasis added.)[1]

In a negligence case, I see foreseeability as an active force in at least two significant ways. It first enters the calculus when *the court* is required to consider the legal sufficiency of the plaintiff's claim, as on a motion to dismiss, a motion for summary judgment, or a motion for directed verdict. If the court concludes that the alleged harm to the plaintiff is reasonably foreseeable, the case is submitted to the jury. At this point, *the jury*, under appropriate foreseeability instructions, will decide whether, in fact, the defendant should have foreseen injury to a person in the plaintiff's position.

I see no vice in recognizing the dual role of foreseeability in the process. Judge Cardozo stated, "The risk reasonably to be perceived defines the duty to be obeyed." *Palsgraf v. Long Island R.R. Co.*, 248 NY 339, 344, 162 NE 99 (1928). Respected scholars long have recognized this. *Fazzolari* itself notes this:

"[Professor Leon] Green described as 'the strangest chapter in all tort law' the apparent identity of the foreseeability or 'anticipation of harm' formulas in defining the duty to take care, the negligence or breach of the duty of care, and the causal relation. He observed that to leave 'the delimitation of the law's protection' to the jury on the facts of each case 'would end any possible hope of law crystallization. * * * Thus it would seem that analysis has played itself false, so that a case is seemingly to be subjected thrice to the ponderous process of the "foreseeability" formula.' Green, Judge & Jury 66-67 (1930). But in fact, he reassured his readers, judges would and should let only doubtful cases go to the jury, and the seeming duplication of tests was only a

---

[1] For a further discussion of this issue, see Forell, *supra*, 70 Or L Rev at 829-30.

522

confusion of 'legal theology.' *Id.* at 69." *Fazzolari v. Portland School Dist. No. 1J, supra,* 303 Or at 9 n 8.

Prosser and Keeton, in "The Law of Torts" 357 (5th ed 1984), echo Professor Green:

"[Duty] is a shorthand statement of a conclusion, rather than an aid to analysis in itself. Yet it is embedded far too firmly in our law to be discarded, and no satisfactory substitute for it, by which the defendant's responsibility may be limited, has been devised. But it should be recognized that 'duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." (Footnotes omitted.)

What, then, should be the methodology for deciding a negligence case? A plaintiff must allege facts from which the court may find that the defendant has an obligation to avoid or prevent harm to a person in the plaintiff's position, *i.e.,* a duty. Determining whether a duty exists is a function for the court. In some cases, the plaintiff may allege that the defendant has a duty based on a status, relationship, or previously defined standard of conduct. In the majority of cases, however, the plaintiff must allege facts from which the court could conclude that harm to a person in the plaintiff's position was a *reasonably* foreseeable consequence of the defendant's conduct. The same analysis applies to the consideration of affirmative defenses that charge a plaintiff with contributory fault.

*Fazzolari* requires only that harm be foreseeable. Almost all harm is foreseeable, even though it occurred through some strange concatenation of events. Liability should not be imposed on a defendant unless that defendant *reasonably* could have anticipated the harm. As *Fazzolari* now stands, only in an "extreme case" may a court decide that "no reasonable factfinder could find the risk foreseeable." *Donaca v. Curry Co., supra,* 303 Or at 38. If a plaintiff's harm is foreseeable (but not *reasonably* foreseeable), the defendant is held to have acted unreasonably. In effect, the defendant is liable for harm that he or she could not reasonably have anticipated. This anomaly should be rectified by requiring that harm to a person in a plaintiff's position be *reasonably* foreseeable.

In the evolution of the common law, we occasionally step sideways or backwards. We can move forward again only when those missteps are corrected. *Fazzolari* has "unforeseeably" complicated Oregon negligence law and detrimentally altered the legal definition of "foreseeability." Whatever may have been intended by the decision, it has removed judges from the decisional process to the derogation of our common-law tradition.

Gillette and Graber, JJ., join in this concurring opinion.

**UNIS, J.,** specially concurring.

I concur in the result, but because I cannot agree with all of the majority's reasoning, I write separately to make four points:

First, this case involves review of a decision to grant a summary judgment under ORCP 47C ("that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). *Kimbler v. Stillwell*, 303 Or 23, 734 P2d 1344 (1987), however, involved review of a decision to dismiss under ORCP 21A(8) ("failure to state ultimate facts sufficient to constitute a claim"). The majority's analysis is legally sound when it declines to apply a motion to dismiss standard to a summary judgment case, 316 Or at 511, but not when, in so doing, the majority sets up *Kimbler*[1] as a straw man to overrule by declining to apply *Kimbler's* motion to dismiss analysis in this summary judgment case, 316 Or at 509-14.

Second, I agree with the concurring opinion, 316 Or at 522, that a "reasonably foreseeable" test should be applied in determining negligence liability. I made that point recently:

"I believe that negligence law should provide liability for reasonably foreseeable consequences, not for any foreseeable consequences. *See* Forell, *Replacing Pragmatism and Policy With Analysis and Analogy: Justice Linde's Contribution to*

---

[1] The court in *Kimbler v. Stillwell*, 303 Or 23, 29, 734 P2d 1344 (1987) stated:

"Of course plaintiff may not be able to back [the allegations] up, but the complaint has not even been answered, let alone reached the stage of summary judgment or trial. We hold only that the circuit court erred in dismissing the complaint."

> *Oregon Tort Law*, 70 Or L Rev 815, 829-32 (1991) (suggesting that this court describes the test as a factual 'foreseeability' test where in practice it applies a 'reasonably foreseeable' test)." *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 181 n 6, 843 P2d 890 (1992) (Unis, J., dissenting).

I believe that what I said in *Onita*, quoted *supra*, reflects the proper understanding of *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987). However, to remove any ambiguity, that emphasis can easily be expressly incorporated in the test of *Fazzolari* without otherwise disturbing the *Fazzolari* trilogy.

Third, the concurring opinion reads as though it is totally trashing *Fazzolari*. The concurring opinion's recommended methodology, however, is strikingly similar to the methodology of the *Fazzolari* trilogy that the concurring justices now wish to jettison. That is, where *Fazzolari*, 303 Or at 17, states that, "unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty," the concurring opinion states that, "[i]n some cases, the plaintiff may allege that the defendant has a duty based on a status, relationship, or previously defined standard of conduct," 316 Or at 522. Where *Fazzolari*, 303 Or at 17, states that, otherwise, "the issue of liability * * * depends on whether that conduct unreasonably created a foreseeable risk to a protected interest," the concurring opinion states that, "in the majority of cases * * * the plaintiff must allege facts from which the court could conclude that harm to a person in the plaintiff's position was a *reasonably* foreseeable consequence of the defendant's conduct," 316 Or at 522 (emphasis in original). Thus, it appears to me that the only real difference is that the concurring justices would allow the court to take a question from the jury where the court considers that there is no duty because the harm was not reasonably foreseeable, a clarification accomplished simply by expressly inserting the word "reasonably" in the *Fazzolari* test. *See supra*, point 2.

Fourth, the concurring opinion now extols the virtues of the common-law system, a position that is more consistent with my criticisms of *G.L. v. Kaiser Foundation Hospitals, Inc.*, 306 Or 54, 757 P2d 1347 (1988), than with

the concurring justices' support of it. *See Keltner v. Washington County*, 310 Or 499, 505, 800 P2d 752 (1990) (majority opinion recognizing *G.L. v. Kaiser's* limitation on common-law authority joined by all justices joining the concurring opinion in this case); *id.* at 510-11 (Unis, J., dissenting) ("[T]he majority declines to undertake reconsideration of [a] nonstatutory rule because of this court's self-imposed methodology of judicial restraint, which substantially limits its authority to change, modify or formulate common law. The court's self-imposed rule of judicial restraint rejects competing-policy methodology in judicial common law-making").

In fact, while the concurring opinion states that the *Fazzolari* opinion was wrongly decided, which is a premise under *G.L. v. Kaiser Foundation Hospitals, Inc., supra*, 306 Or at 59, for overruling a case, the concurring opinion does so without reference to *G.L. v. Kaiser* and its court-imposed restriction on the court's common-law authority. I dissented in *Keltner* when all the justices joining the present majority and concurring opinions stated:

> "Because plaintiffs have failed to demonstrate affirmatively [under the methodology of *G.L. v. Kaiser*] that any premise on which this court should appropriately reconsider the rule in issue is present in this case, this court has no grounds to reconsider the [rule involved]. We therefore decline to do so." *Keltner v. Washington County, supra*, 310 Or at 510.

In this case, however, the parties have not suggested, much less "affirmatively demonstrated," that any of the cases in the *Fazzolari* trilogy were wrong or should be overruled; yet, the majority overrules *Kimbler v. Stillwell, supra*, and the concurring justices would overrule *Fazzolari* and *Donaca*. Apparently the self-imposed restraint on the court's common-law authority is heeded only when it is convenient to do so.

I wish to emphasize, however, that I still disagree with *G.L. v. Kaiser's* artificial restraints on the court's common-law authority. Nevertheless, I would not overrule precedent as cavalierly as would the majority and concurring opinions in this case. As I stated in *Keltner v. Washington County, supra*, 310 Or at 512:

"I would jettison this court's self-imposed rule that precludes it from justifying rules of common law or doctrine in terms of policy. Abandonment of the present decision-making methodology employed by this court, which I advocate, does not mean that this court should ignore the doctrines of judicial restraint and stare decisis, which recognize the need for stability and predictability in the development of the law."

I am not convinced that the *Fazzolari* trilogy should be overruled.