Argued and submitted October 29, 2020, affirmed April 6, 2022

F. T.,
as guardian *ad litem* for F. G.,
a minor proceeding under a pseudonym,
*Plaintiff-Appellant,*
*and*

S. D.,
an individual proceeding under a pseudonym,
*Plaintiff,*

*v.*

WEST LINN-WILSONVILLE SCHOOL DISTRICT,
an Oregon Public School District,
authorized and chartered by the laws of
the State of Oregon,
*Defendant-Respondent.*

Clackamas County Circuit Court
17CV32280; A169939

509 P3d 655

Plaintiff brought this negligence action as guardian *ad litem* for her minor son F, seeking damages from defendant West Linn School District (the district) for harm caused by a district teacher who sexually assaulted F in F's home. The trial court granted summary judgment in favor of the district on plaintiff's direct negligence claim. On appeal, plaintiff challenges that ruling, arguing that, the district owed a heightened duty of care to its students because of the educator-student relationship and that, in any event, there was sufficient evidence from which a jury could find that the sexual assault of F was foreseeable to the district. *Held*: The Court of Appeals concluded that liability, on the facts of this case, could not be sustained solely on the basis of the educator-student relationship. The court also concluded that the summary judgment record did not support a reasonable inference that the district should reasonably have foreseen that the teacher posed a risk of sexual assault to its students.

Affirmed.

Thomas J. Rastetter, Judge.

Travis Eiva argued the cause for appellant. Also on the opening brief were Stephen F. Crew and Peter B. Janci. Also on the reply brief were Stephen F. Crew, Peter B. Janci, and William Stewart.

Blake H. Fry argued the cause for respondent. Also on the brief were Peter R. Mersereau and Mersereau Shannon LLP.

Before Mooney, Presiding Judge, and Lagesen, Chief Judge, and DeVore, Senior Judge.*

MOONEY, P. J.

Affirmed.

Lagesen, C. J., concurring in part, dissenting in part.

_____

* Lagesen, C. J., *vice* DeHoog, J. pro tempore.

**MOONEY, P. J.**

Plaintiff filed this action as guardian *ad litem* for her minor son F, seeking damages from the defendant, West Linn School District (the district), in which F was enrolled, for harm caused by a teacher who sexually assaulted F in F's home. The trial court granted summary judgment in favor of the district on plaintiff's direct negligence claim. Plaintiff appeals.[1] As we explain below, we conclude that the trial court did not err, and we therefore affirm.

## I.   STANDARD OF REVIEW

This is a civil case and, as such, the parties have a "right of Trial by Jury." Or Const, Art I, § 17. However, a party against whom a claim is asserted "may *** move *** for a summary judgment in that party's favor as to all or any part of any claim or defense." ORCP 47 B. To avoid summary judgment in favor of the moving party, the non-moving party has "the burden of producing evidence on any issue raised in the motion as to which [the plaintiff] would have the burden of persuasion at trial." *Two Two v. Fujitec America, Inc.*, 355 Or 319, 324, 325 P3d 707 (2014) (internal quotation marks omitted). We view the record in the light most favorable to the nonmoving party—here, plaintiff—resolving all reasonable inferences in her favor. *Jennewein v. MCIMetro Access Transmission Services*, 308 Or App 396, 400, 481 P3d 939 (2021). Our task is to determine whether, on this record, an "objectively reasonable juror could return a verdict for [plaintiff] on the matter that is the subject of the motion for summary judgment." *Sanders v. Vigor Fab, LLC*, 308 Or App 282, 283, 480 P3d 999 (2020), *rev den*, 368 Or 702 (2021). Ultimately, we will affirm a grant of summary judgment where the record shows that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Jennewein*, 308 Or App at 400.

---

[1] This appeal is from a limited judgment dismissing the direct negligence claim filed on behalf of F only. S. D., a plaintiff below, is not a party to this appeal. All references to "plaintiff" are references to F's guardian *ad litem*.

The second count of plaintiff's direct negligence claim for relief (negligence *per se*) and the second and third claims for relief (vicariously liable for the teacher's intentional acts) are not before us.

## II.   FACTUAL BACKGROUND

For purposes of our review, the material facts are largely undisputed, and we state them in accordance with the standard of review.

F lived in California with his family until the fall of 2015 when he moved to Oregon to attend West Linn High School (WLHS) with his sister, M, who had already attended her freshman year there. While attending school, F and M lived with their cousin, Swanson, and her boyfriend, Olson, in Olson's Lake Oswego home (the lake house). F began attending WLHS on August 31, 2015.

Peachey was a Spanish teacher, employed by the district. Peachey was also advisor to the "link crew," a school orientation program that assists freshmen with the transition to high school, and a coach.

There had been concerns about Peachey's teaching skills, for which he had been under structured administrative oversight for several years. In particular, the district was concerned that Peachey's Spanish-1 and Spanish-2 students were "underperforming" in their next level Spanish studies. Peachey developed a reputation among students as an easy teacher and, while he was generally well-liked by his students, he received mixed reviews on student evaluations. Peachey occasionally took students off campus to lunch at restaurants. He put photographs of students taken off campus in his classroom. Peachey sometimes hugged his students, including F. After classes began, Peachey placed a photograph of F in his classroom. He spent time with F and his friends outside of school, and he sometimes drank alcohol on those occasions.

Peachey was arrested twice for driving under the influence of intoxicants (DUII) while employed as a WLHS teacher—once in 2010 and once in 2012. The DUIIs occurred after school hours. The 2012 DUII occurred after Peachey left a party hosted by Hammond, a WLHS staff member. The district sent a letter to the Teacher Standards and Practices Commission in October of 2012, as required, reporting that Peachey had received his second DUII in a three-year period.

Olson owned the lake house. He was not employed by the district and, although Swanson once worked as a district secretary, she was not so employed at any time relevant to this case. Swanson and Peachey were friends. On occasion, Peachey would house-sit for Swanson and Olson, which entailed Peachey staying overnight at the lake house.

F met Peachey at the lake house in the summer of 2015. F participated in link crew before the school year started. Peachey gave F rides to and from link crew, basketball camp, and golf camp. Peachey also gave F and M rides between the lake house and school while Olson and Swanson were out of town. Peachey helped F and M register for classes, including F signing up for Peachey's Spanish class. F's mother knew that Peachey would house-sit at the lake house while Swanson and Olson were away and while her children were there.

Olson's daughter-in-law, Michelle Olson,[2] was employed as a guidance counselor at WLHS. She first met F and his family through her father-in-law at the lake house. M had been on Michelle's "caseload" during the 2014/2015 school year, but Michelle was not F's guidance counselor. At some point in the fall of 2015, Michelle learned that another student, S, had reported being sexually abused by Peachey at the lake house. Michelle checked in with F and M when plaintiff asked her to do so, and M told her that they had more information about Peachey that they would like to share. At that point, Michelle sent them to speak with the school principal. Michelle did not participate in that conversation, because she wanted to keep work and family issues separate.

Peachey lived in the home of another WLHS teacher, Monson. They had been roommates for some period of time and, according to Monson, Peachey was gone a lot during the summer of 2015. She knew that he was house-sitting at the lake house and in the home of another friend as well. Monson was present at the lake house three times that summer. The first time was for a birthday celebration to which Peachey invited her. The next two times involved

---

[2] To avoid confusion, we refer to Michelle Olson by her first name only in the remainder of this opinion.

boating and similar activities. Kids were present and there was a "summer camp environment." Peachey was present on all three occasions, often "prepping snacks or lunches" in the kitchen. Monson did not see anyone that appeared to be under the influence of alcohol on her visits to the lake house.

S, a WLHS student, attended summer gatherings with Peachey at the lake house. He drank alcohol provided by Peachey on at least two of those occasions. S began staying overnight at the lake house in July and, on some of those nights, he would sleep in the same bedroom as Peachey. One morning, Swanson observed Peachey and S come out of the same bedroom, and she told Peachey that that was not appropriate. Swanson did not see Peachey provide alcohol to minors at the lake house, but she was later made aware that Peachey had done so, and she confronted him about that. Swanson "was just very shocked and frustrated," and she told Peachey "that it could not happen in our home, we cannot be providing alcohol to minors."

During the times in which Swanson and Olson were away, Peachey and F slept in one bedroom and F's sister slept in the other bedroom. During one of those nights, when Peachey was intoxicated, he tried to "spoon" with F, and he touched F's penis. F immediately left the bedroom and told his sister what had happened. Reports were made to law enforcement and school authorities. Criminal charges were brought, and Peachey later pleaded guilty to sexually abusing F. This lawsuit followed.

## III.   PROCEDURAL POSTURE

Plaintiff brought claims against the district arising out of Peachey's sexual abuse of F. The only aspect of this case that is before us on appeal is plaintiff's first claim for relief, Count 1, in which she alleges that the district was directly negligent in failing to investigate and report "frequent credible rumors" about Peachey's "risk to minor male students," including that he was "engaged in [an] inappropriate relationship" with F; in retaining and in supervising Peachey as an employee after "being notified of the credible rumors" that he was "engaged in [an] inappropriate relationship" with F; in failing to adequately train its staff in "how to recognize, report, and prevent child sexual abuse";

and in "failing to properly implement common sense child abuse prevention policies."

Plaintiff assigns error to the trial court's granting of the district's motion for summary judgment on plaintiff's direct negligence claim. She argues that the educator-student relationship is a special relationship and that, because of that relationship, the district owes its students, including F, a heightened duty of care to protect them from abuse. She argues, further, that the "obligations of schools are further buttressed by traditional common-law duties of all organizations to reasonably retain and supervise employees, so they do not cause foreseeable harms," and she contends that the district's heightened duty thus extends the school's responsibility to protect students from foreseeable dangers that may occur off campus or outside of classroom hours. Finally, plaintiff contends that there was sufficient evidence in the record to allow her claims of direct negligence against the district to go to the jury for decision.

The district acknowledges that it owes its students a "duty of supervision" that places on it "something more than the generalized obligation people have to merely refrain from conduct that causes other people a foreseeable risk of harm." The district argues that it does not, however, owe "a duty of supervision to students while they are entrusted to a parent's care," engaged in nonschool activities, off campus, and outside of school hours. And, because Peachey assaulted F in F's home under circumstances that were not school-sponsored or related, the district argues that its liability is limited to harms that were reasonably foreseeable. It argues that plaintiff did not produce sufficient competent evidence to raise a triable issue that Peachey's assault of F was foreseeable. Summary judgment was thus, in the district's view, appropriate. For the reasons that follow, we conclude that there was insufficient evidence to raise a genuine issue of material fact on the question of whether the district "created a foreseeable risk [that] Peachey" would "sexually abuse minor high school males," including F, by failing to take the actions alleged by plaintiff in paragraph 17 of her complaint.[3]

---

[3] Given that conclusion, we need not and do not reach the issue of discretionary immunity.

## III.  ANALYSIS

"[U]nder Oregon common law, a person whose negligent conduct unreasonably creates a foreseeable risk of harm to others and causes injury to another ordinarily is liable in damages for that injury." *Harris v. Suniga*, 344 Or 301, 307, 180 P3d 12 (2008). Said another way, when one acts carelessly—or carelessly fails to act—causing injury to another person, the careless person may be held liable to the injured person under the legal theory of negligence. In the parlance of traditional common law, a negligence claim requires proof that the district owed plaintiff a duty, that the district breached that duty, and that the breach caused some "legally cognizable" damage to plaintiff. *Brennen v. City of Eugene*, 285 Or 401, 405, 591 P2d 719 (1979). If the district's conduct did, in fact, cause plaintiff's harm, then the element of causation would be satisfied, and the court would consider the legal concepts of "negligence," "risk," and "foreseeability" to "determin[e] the scope of defendant's duty and whether that duty was breached." *Id.* As the Supreme Court later explained in *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987),

> "unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."

As noted, plaintiff invokes a special relationship in this case, contending that the district, as educator, owed F, its student, a special duty of care beyond a general duty not to unreasonably expose him to foreseeable risks of harm. The district acknowledges that "schools and their students are in a recognized special relationship," and that schools owe "a duty of supervision" to their students "while they are entrusted to the school's care." Nevertheless, the fact that an educator-student relationship exists between the parties does not automatically establish liability, and it does not mean that the special relationship exists apart from the context that creates it. Therefore, we must examine the special relationship to determine whether it defines or limits

the district's liability to F. *See McPherson v. Oregon Dept. of Corrections*, 210 Or App 602, 609, 152 P3d 918 (2007) (outlining process where a special relationship is invoked).

The district's "duty of supervision" requires it to protect its students from reasonably anticipated harm that could occur while the students are under its care, including harm from third-party criminal acts. *Fazzolari*, 303 Or at 19-20. The district is not strictly liable for harm caused by its negligence, but because of its special relationship to its students, its negligent conduct "is tested by an obligation of reasonable precautions against foreseeable risks beyond those that might apply to other persons." *Id.* But, in the end, a school's liability for harm to its students "does not extend to unforeseeable risks of harm." *Stewart v. Kids Incorporated of Dallas, OR*, 245 Or App 267, 279, 261 P3d 1272 (2011), *rev dismissed*, 353 Or 104 (2012) (emphasis omitted). And, so, for example, in *Fazzolari*, where the plaintiff was a student who was sexually assaulted on school grounds before the start of classes, the Supreme Court stated that it "cannot be said," as a matter of law, that the school had no duty to be concerned about the safety of students who arrive to the school campus early. 303 Or at 20-21.

We conclude that liability, on the facts of this case, cannot be sustained on the "duty of supervision" that exists because of the educator-student relationship. As explained in *Fazzolari*, that duty is predicated on the compulsory school attendance law, ORS 339.010 to 339.090, which "virtually mandates" that parents entrust their children to the care and supervision of their children's school. 303 Or at 19. Because parents must relinquish their children to the school each day, and because those parents are necessarily absent once the transfer of custody has been accomplished, policy considerations impose on the school a duty of care to those students beyond the general duty of reasonable care. But when parents resume custodial control of their children, that rationale disappears, and the school's "duty of supervision" comes to an end. Here, the assault did not occur during school hours. It did not happen on school grounds. And it did not take place during a school-sponsored activity or at any time F was within the district's custodial control. Rather, it occurred in the evening, at a private residence, after F

returned to his parents' custodial control. To be sure, the assault occurred at the hands of Peachey, who was a district employee. But it did not occur at a time when F was within the district's custody and it did not occur when Peachey was teaching, coaching, or otherwise discharging his duties as a district employee. And it is undisputed that F's family, and not the district, entrusted F to Peachey's supervision in Swanson and Olson's home.

Plaintiff nevertheless argues that the record contains sufficient evidence from which a jury "could find that it was foreseeable that a student," such as F, could be abused by Peachey and, further, that the question of whether the district's conduct is of the type for which it should be held liable should not have been taken away from the jury. The district disagrees and contends, essentially, that its responsibility for supervision does not extend into its students' homes, at night, when they are in the care of their parents. The district stresses that its liability for damages does not extend to harms that were not reasonably foreseeable. In its view, the evidence does not support that "the school district had reason to know that Peachey might sexually assault [F] while [Peachey] look[ed] after [F] at the lake house." We turn, then, to examine the limits of the district's liability through the concept of foreseeability. *Id.* at 17; *see also Allstate Ins. Co. v. Tenant Screening Services, Inc.*, 140 Or App 41, 50, 914 P2d 16 (1996).

We view the district's "conduct through the lens of the circumstances of the case," necessarily from the standpoint of what it knew or should have known about the risks of harm at the time it engaged in the alleged negligent conduct. *Jennewein*, 308 Or App at 405. The concept of foreseeability in negligence cases involves (1) a factual assessment of whether the thing that happened could have been predicted or anticipated, and, if so, (2) a value judgment about whether that thing could and should have been prevented by altering the conduct on which the factual prediction of harm was made. *Piazza v. Kellim*, 360 Or 58, 70 n 6, 377 P3d 492 (2016). That "blended factual and normative" assessment is "value-laden" and, because of that, we generally commit the question of foreseeability to the jury. *Id.* Foreseeability is case specific—an *ad hoc* determination in the context of

each case; there are no "bright line rules;" and "[*u*]*nforeseeability* as a matter of law" should rarely be found. *McPherson*, 210 Or App at 617 (emphasis added). And yet, the process of factually and normatively discerning foreseeability in any given case requires a broader focus than simply reviewing the predictability of the sequence of events that actually occurred. *Piazza*, 360 Or at 81-82.

We bear in mind that legal liability for negligent acts is not without limits, *McPherson*, 210 Or App at 617, and that the foreseeability determination is not "untethered to principle." *Piazza*, 360 Or at 81. If the plaintiff's injury arose from a "concatenation of highly unusual circumstances," *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 609, 469 P2d 783 (1970), or "an extended sequence of improbable chance occurrences," *McPherson*, 210 Or App at 618, then we would deem the resulting harm "unforeseeable as a matter of law," *Chapman v. Mayfield*, 358 Or 196, 206, 361 P3d 566 (2015). In cases where the foreseeability of the outcome based upon a defendant's conduct is at the "outer margins," the trial court fulfills its role as "gatekeeper" by removing the issue from the jury's consideration. *Piazza*, 360 Or at 94. "[T]he question is whether a reasonable person considering the potential harms that might result from his or her conduct would 'have reasonably expected the injury to occur.'" *Chapman*, 358 Or at 206 (quoting *Stewart*, 255 Or at 609-10).

The question before us is whether the summary judgment record contains sufficient evidence to raise an issue of material fact as to plaintiff's allegation that the district created a foreseeable risk that Peachey would sexually assault its male students, including F. The answer depends on what the district knew or should have known before the assault took place. We look to what the district's employees knew, because their knowledge, as agents of the district, is imputed to the district, so long as they acquired their knowledge "within the scope of their work" for the district. *Doe v. Oregon Conference of Seventh-Day Adventists*, 199 Or App 319, 326, 111 P3d 791 (2005).

Viewing the record evidence in the light most favorable to plaintiff, this is what the district knew: Peachey had been employed by the district for over 10 years working as

a teacher and a coach. His teaching skills were inadequate, and the district had provided ongoing oversight of his performance. All district staff, including teachers, received mandatory annual training about maintaining appropriate boundaries with students and mandatory child abuse reporting obligations. Peachey occasionally drove students off campus for lunch. He placed photographs in his classroom that showed him spending time with students, including F, away from school. Peachey expressed affection for some students, including F, by hugging them. Peachey had two DUIIs within a three-year period, one in 2010 and one in 2012. Peachey drove F and M to school and other school-related activities. He helped them register for classes, including F's enrollment in his Spanish class.

The record would permit a jury to conclude that Peachey's performance as a teacher was substandard; that he exercised poor judgment in taking students to lunch at off-campus locations, in posting off-campus photos of students in his classroom, in being physically affectionate with his students; and, in doing so, that he had violated district rules regarding appropriate teacher-student boundaries. The record would also support a finding that Peachey had significant issues with alcohol abuse. If this case were about a student injured in an automobile accident that occurred while Peachey was driving that student to or from an off-campus lunch, a jury might infer that the accident—and thus the injuries—were foreseeable. If the accident had occurred when Peachey was intoxicated, the jury might readily infer that, given the district's knowledge of Peachey's DUIIs and his occasional practice of taking students off campus to lunch, it was foreseeable that an accident might occur. But that is not the nature of the risk that occurred.

As we consider whether plaintiff met her burden to produce competent evidence that the district created a foreseeable risk that Peachey would sexually assault one of its students, we note that the record contains no evidence that Peachey was a violent person or that he had a history of sexually assaulting children. There is no evidence that any district employee was aware that Peachey had shared a bedroom with S or with any other WLHS student. Swanson was not a district employee, and her knowledge

that Peachey had shared a bedroom with S is not imputable to the district. Her knowledge that Peachey had provided alcohol to minor WLHS students is likewise not imputable to the district. Plaintiff argues that the district was aware, through its employee, Monson, that Peachey provided alcohol to minor WLHS students. In support of its motion, the district relied upon Monson's deposition testimony denying any knowledge of Peachey providing alcohol to minors. Plaintiff responded by producing the deposition testimony of S that he attended a party with Peachey where district employees, possibly including Monson, were present when Peachey gave him alcohol. But S testified that it was "hard for [him] to say who" was present or whether they—or she—saw Peachey give him alcohol. And even if Monson had seen Peachey give S alcohol, the record does not contain evidence that she observed that within the scope of her employment with the district. S's equivocal testimony is not sufficient evidence of the district's knowledge that Peachey gave alcohol to students. And while plaintiff produced the testimony of F and M that Peachey had offered them and other WLHS students alcohol, she produced no evidence that they—or any student—told a district teacher or other employee about that.

As we understand it, the thrust of plaintiff's argument is that the district had enough information to conclude that Peachey was grooming F for abuse, that it did nothing to interrupt that grooming behavior, and that it was, thus, reasonably foreseeable that Peachey would sexually assault F. We do not agree. As the dissent correctly notes, the district identifies spending time or transporting a student "alone" as an inappropriate interaction. 318 Or App at 710 (Lagesen, C. J., concurring in part, dissenting in part). But there is no evidence that the district was aware that Peachey had spent time alone with F or any other student. There is likewise no evidence that the district knew Peachey had transported F or any other student "alone in a private vehicle." And there is no evidence that Peachey had established a "pattern of favoritism toward an individual student." The dissent concludes that, because the district was aware that Peachey had placed a photograph of F in his classroom, and because the district knew that Peachey would sometimes take

students off campus to lunch, the district's failure to take the actions plaintiff alleges it should have taken created a foreseeable risk that Peachey would sexually assault one of its students. *Id.* at 711 (Lagesen, C. J., concurring in part, dissenting in part). But the district guidelines that identify inappropriate interactions with students focus on avoiding interactions with, or favoring, a single student. And given the goal of avoiding "grooming" or the perception of "grooming," that makes sense. But, in any case, the record lacks sufficient evidence that the district was aware that Peachey was grooming F or any other student for sexual abuse.

Knowledge of Peachey's poor classroom performance might support the inference that Peachey's students were at risk of performing poorly in advanced study classes. Knowledge of Peachey's DUIIs, combined with knowledge that he drove students off campus, might support an inference that Peachey's students were at risk of being in an automobile accident. Knowledge that, despite his training, Peachey displayed off-campus photos of students in his classroom and that he sometimes took students to lunch off campus would permit a jury to find that Peachey had poor teacher-student boundary issues. But even considered together, the summary judgment record does not support a reasonable inference that the district should reasonably have foreseen that Peachey posed a risk of sexual assault to its students.

It is significant that the assault occurred away from school, at night, and in the home to which F's parents had entrusted F while he attended WLHS. *Fazzolari* is instructive, because it also involved the sexual assault of a student; but, unlike this case, that assault took place on school grounds. 303 Or at 20. *Fazzolari* is also different, *albeit* in another way, because the perpetrator there was a third party, and here, the perpetrator was a teacher employed by the defendant school district. That difference creates the issue of what the school district knew or should have known and plays into the question of whether sexual assault of a student was reasonably foreseeable based on the information that the school district had. In *Fazzolari*, because there was evidence that a woman had been sexually assaulted on school property 15 days before the attack against the

plaintiff, and because the plaintiff attempted to introduce evidence of other attacks, a question existed for the jury as to whether the attack at issue was reasonably foreseeable. *Id.* at 21-22.

Here, however, there is no evidence that the district was aware of any conduct, or any rumors of conduct, on the part of Peachey to suggest that he posed a risk of sexual assault to district students. This case is similar to *Buchler v. Oregon Corrections Div.*, 316 Or 499, 853 P2d 798 (1993). In *Buchler*, a convicted felon working on a road crew stole a transport van using the keys left in the van by the crew supervisor, drove 50 miles to his mother's residence, stole a gun from her and then shot two people, killing one of them. *Id.* at 502. There was no evidence that the corrections division had any knowledge that the prisoner was violent or combative. The trial court granted the state's motion for summary judgment. *Id.* at 503. Concluding that the plaintiffs' injuries were not a reasonably foreseeable consequence of the risk of leaving the keys in the van, *id.* at 514, the Supreme Court explained:

> "While it is generally foreseeable that criminals may commit crimes and that prisoners may escape and engage in criminal activity while at large, that level of foreseeability does not make the criminal's acts the legal responsibility of everyone who may have contributed in some way to the criminal opportunity."

*Id.* at 511.

This is one of those rare cases where the question of foreseeability was properly withdrawn from the jury. The dissent suggests that foreseeability is not actually an issue before us. 318 Or App at 708-09 (Lagesen, C. J., concurring in part, dissenting in part). And yet one cannot assess the adequacy of the evidence offered to raise a triable issue as to plaintiff's allegations of negligence (contained in paragraph 17 of the complaint) without addressing whether such negligence created a foreseeable risk of the harm alleged. And while there is undisputed evidence that plaintiff and her children trusted Peachey at least in part because he was a WLHS teacher, the evidence is that it was F's cousin, Swanson, who engaged Peachey as a house-sitter. And it

was Swanson in whose care plaintiff left her children. The district played no role in deciding where F would live while he attended WLHS, and it played no role in selecting a house-sitter for the lake house. The district did not decide whether Peachey would be alone at the lake house with F and M and it did not decide where Peachey would sleep while he was house-sitting at the lake house. The district was not involved in any of the details concerning how F would be supervised and cared for while living with Swanson and Olson in Lake Oswego. The fact that Swanson and Olson chose a house-sitter who also happened to be employed by the district does not change the fact that the district had no knowledge of those details. Peachey's criminal assault of F, under those circumstances, was not foreseeable. Therefore, the district is not directly liable in negligence for the harm caused by the assault. It was entitled to summary judgment against all specifications of negligence, because plaintiff failed to produce evidence that Peachey's sexual assault of F was reasonably foreseeable by the district.

Affirmed.

**LAGESEN, C. J.,** concurring in part, dissenting in part.

The question is whether the trial court correctly granted summary judgment to defendant, West Linn-Wilsonville School District, on the specifications of negligence alleged in paragraphs 16, and 17(a), (b), (c), (d), (e), and (f) of the complaint. I concur in the decision to affirm the grant of summary judgment as to the specifications in paragraph 17(e) and (f), but respectfully part ways from my colleagues on the decision to affirm the grant of summary judgment as to specifications in paragraphs 16 and 17(a), (b), (c), and (d). In brief, the district's asserted basis for summary judgment as to the latter specifications was that plaintiff would not be able to present evidence of the factual predicate underlying those allegations: that the district had been notified that Peachey had "inappropriate relationships" with plaintiff and other students. The trial court granted summary judgment to the district as to those specifications on that asserted basis. The record, however, would allow a reasonable factfinder to find that the district

had been notified that Peachey engaged in conduct with students that its own policy deemed "inappropriate." In particular, it would allow the inference that the district engaged in conduct that its own policy characterized as "grooming." Beyond that, although I do not view the district's motion to put the question of foreseeability at issue, if it did, the record would allow a finding that the harm occasioned by the district's alleged negligence was not only foreseeable, but foreseen. Accordingly, the grant of summary judgment on those specifications should be reversed and remanded for trial.

As an initial matter, the majority opinion upholds the grant of summary judgment on all specifications based on its determination that plaintiff's evidence on the foreseeability element of a negligence claim is insufficient to create a jury question on that element. *See, e.g.*, *Piazza v. Kellim*, 360 Or 58, 73, 377 P3d 492 (2016) (analyzing whether allegations in complaint were sufficient to withstand ORCP 21 A(8) motion on the issue of foreseeability); *see also Chapman v. Mayfield*, 358 Or 196, 206, 361 P3d 566 (2015) (analyzing whether evidence on summary judgment was sufficient to create a triable issue of fact on the question of foreseeability). That approach, although invited by the parties' appellate arguments, is problematic under the law that governs summary-judgment procedure. Under ORCP 47, a court is not empowered to grant summary judgment on an issue that is not raised by the moving party's motion. *Eklof v. Steward*, 360 Or 717, 736, 385 P3d 1074 (2016); *Two Two v. Fujitec America, Inc.*, 355 Or 319, 325-26, 325 P3d 707 (2014); *Woodroffe v. State of Oregon*, 292 Or App 21, 28, 422 P3d 381 (2018). Correlatively, an appellate court cannot affirm a grant of summary judgment on a ground not raised by the motion, because "the opposing party had no reason to adduce evidence on an issue that was not raised in the summary judgment motion." *Eklof*, 360 Or at 736.

In this case, the district's motion for summary judgment did not raise the issue of whether plaintiff would be able to present sufficient evidence to create a triable issue as to whether the harm to plaintiff was a foreseeable risk of the alleged negligent conduct identified in paragraphs 16 and 17(a), (b), (c), and (d). Consequently, the question of whether the harm to plaintiffs was a foreseeable risk of the district's

alleged negligence was not before the trial court and is not before us. Rather, the question before us is whether the trial court's grant of summary judgment was correct on the specific issues raised in the district's motion as to those specifications.

On that question, the district's motion against the specifications of negligence in paragraphs 16, and 17(a), (b), (c), and (d), was based on the assertion that plaintiff would not be able to establish the underlying factual predicate of those specifications—that the district had been notified of "credible rumors" that Peachey was involved in "inappropriate relationships" with plaintiff or with other students.[1] In its memorandum in support of its motions, the district argued that "there is no evidence that the District had knowledge of the alleged rumors," and

> "Plaintiffs' allegations assume that the District knew, prior to the incidents of plaintiffs' alleged abuse, of a 'rumor' or 'credible rumor' that Peachey was engaging in inappropriate relationships with plaintiffs and others; however, there is no evidence that the District knew of any inappropriate relationships between Peachy and plaintiffs (or others) until plaintiffs brought their allegations to the District in mid-September 2015, after the abuse had ended.

> "Plaintiffs' specifications of negligence are based on factual predicates that are absent. As such, plaintiffs cannot create a genuine issue of material fact on each of these specifications of negligence and the District is entitled to judgment in its favor."

The trial court agreed with the district and granted summary judgment with respect to the allegations in paragraphs 16, and 17(a), (b), (c), and (d) on that basis.

---

[1] Defendant also moved against paragraph 16 on the ground that plaintiff's "special relationship" theory failed, because the abuse of plaintiff occurred off campus. The trial court did not address that aspect of defendant's motion. In my view, neither the allegations in the complaint about a "special relationship," nor the contentions in defendant's motion for summary judgment about the "special relationship," supply any ground for affirming the grant of summary judgment. It is not clear that the "special relationship" allegation in the complaint was intended as a separate theory of liability, and defendant's arguments in its motion for summary judgment addressing the alleged special relationship were not well developed. In any event, Oregon courts long have recognized a "special relationship" between schools and the students who attend them. *Stewart v. Kids Incorporated of Dallas, OR*, 245 Or App 267, 279, 261 P3d 1272 (2011), *rev dismissed as improvidently allowed*, 353 Or 104 (2012).

In my view, the trial court erred. Plaintiff presented evidence that the district had a policy identifying "inappropriate" behavior by teachers and also presented evidence that would allow the inference that the district was aware that Peachey was engaging in conduct with students that would be deemed "inappropriate" under its own policy, including conduct characterized by the policy as grooming activity. The district's policy addressing student-teacher "[r]elationships" identifies the following as "Inappropriate Interaction[s]":

- "Spending time alone with a student in any circumstance."

- "Transporting a student alone in a private vehicle."

- "A pattern of favoritism toward an individual students [*sic*]. (Gifts, excusing tardies, writing notes . . .) This is commonly known, or perceived as grooming behavior."

The record in this case would permit the reasonable inference that Peachey's interactions with students fell within the "inappropriate" category. Although, as the majority opinion correctly recognizes, it is not inferable that much of the information about Peachey circulating around the community of West Linn had been communicated to the district or someone acting on its behalf, it is inferable that the district was aware of some of it. Specifically, there is evidence that "in his classroom, Mr. Peachey hung pictures of himself spending one-on-one time with students outside of school, including pictures of [plaintiff F] and [his sister]." From that evidence, a factfinder could infer that the district knew that Peachey was spending one-on-one time with students outside of school, something not appropriate under its policy, because it is reasonable to infer that the district was "notified" of the content hung on the walls of its school buildings, content that revealed Peachey to be engaged in interactions not appropriate under the district's own standards. There is also evidence that Peachey would take certain students to lunch off campus and that the district had been notified of that. That evidence, taken as a whole, would permit a reasonable factfinder to find that Peachey was engaged in behavior that was inappropriate as a matter of district policy, that the behavior had the hallmarks of

grooming, and also that the district had been notified of that conduct. Accordingly, there is a triable issue on the question whether the district had been notified that Peachey's relationships with students were inappropriate and, in particular, involved grooming.

As noted, I do not view the district's motion to have put foreseeability at issue. But if it did, the record would permit a reasonable factfinder to find that the harm occasioned by the district's alleged negligence—child sexual abuse of a student by a teacher—was a foreseeable one. The district had a policy that deemed certain interactions between teachers and students to be inappropriate, including interactions that reflected grooming behavior. The district supplied training about those inappropriate interactions. According to one of the district's administrators, the purpose of those policies and trainings about appropriate and inappropriate interactions between teachers and students is "[t]o protect kids and keep them safe" from abuse by "not allow[ing] something to escalate." That the purpose of the district's policy was to prevent inappropriate behaviors from escalating into abuse would allow a reasonable factfinder to find that it was foreseeable that if a teacher interacted with a student in a way deemed inappropriate under the policy, the student was at risk of abuse. The reason for the policy was to prevent abuse by identifying the types of interactions that could escalate into abuse and to deem them inappropriate because of that actually foreseen risk.

With respect to the specifications in paragraph 17(e) and (f), the district's stated basis for seeking summary judgment on those specifications was that the district was entitled to discretionary immunity, and the trial court granted summary judgment to the district on that ground. Discretionary immunity is an affirmative defense on which the district would bear the burden of proof at trial. *Robbins v. City of Medford*, 284 Or App 592, 596, 393 P3d 731 (2017). That means that "summary judgment is appropriate only if [defendant] establishes all of the elements of the defense as a matter of law." *Id*. (internal quotation marks omitted).

Plaintiff's arguments on appeal do not meaningfully engage with that standard and, in any event, in this

case, that standard is met. The district is entitled to discretionary immunity under ORS 30.265(6)(c) if three elements are met. *Id*. at 597. The conduct at issue must be the product of a decision, the decision must be a policy decision, and "the decision must have been made by a governmental decisionmaker with the authority to make that type of policy decision." *Id*.

Here, paragraph 17(e) alleges that the district was negligent in "failing to adequately train employees, coaches, and/or volunteers, including Peachey, in how to recognize, report, and prevent child sex abuse." Paragraph 17(f) alleges that the district was negligent in "failing to properly implement common sense child abuse prevention policies." The uncontroverted evidence in the record was that the district—a governmental entity—had adopted policies addressing required training in recognizing and reporting child abuse and then trained its staff in accordance with those policies. Under those circumstances, the trial court correctly concluded that the district was entitled to summary judgment on the specifications in paragraph 17(e) and (f) on the ground of discretionary immunity. *See Westfall v. Dept. of Corrections*, 355 Or 144, 157-64, 324 P3d 440 (2014) (discretionary immunity applied where governmental entity had adopted policy and then made challenged decision in accordance with policy).

For those reasons, I concur in part and dissent in part.