796 March 18, 2026 No. 203

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Alma WORDEN,
in her capacity as Personal Representative of the
Estate of Cody Worden,
*Plaintiff-Appellant,*

*v.*

Ivan MILLER,
*Defendant,*

*and*

Eilene MILLER,
*Defendant-Respondent.*

Lake County Circuit Court
21CV08851; A181518

David M. Vandenberg, Judge.

Argued and submitted November 19, 2025.

Kathryn H. Clarke argued the cause and filed the briefs for appellant.

Erika Wilson argued the cause for respondent. Also on the brief was Janet M. Schroer and Hart Wagner LLP.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

O'CONNOR, J.

Affirmed.

**O'CONNOR, J.**

In 2018, defendant's 13-year-old son, Z, accidentally shot and killed his friend, C, who was also 13. Plaintiff, C's mother, in her capacity as the personal representative of C's estate, filed this negligence action for wrongful death against defendant and defendant's ex-husband, Z's father.[1] The trial court granted summary judgment to defendant and entered a limited judgment dismissing the action as to her.

Plaintiff appeals and raises one assignment of error, contending that the trial court erred when it granted summary judgment to defendant. Plaintiff argues that the trial court erroneously concluded that the risk of harm resulting from defendant's son's unsupervised access to firearms and ammunition was not foreseeable to defendant as a matter of law. Foreseeability is a jury question, except in rare cases where no reasonable jury could find the risk of harm foreseeable from the defendant's conduct. This is one of those rare cases, as we explain below. We thus conclude that trial court did not err, and we affirm.

## STANDARD OF REVIEW

ORCP 47 governs summary judgment. When a trial court grants summary judgment, we "view the facts and all reasonable inferences that may be drawn from them in favor of the nonmoving party." *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001). We review "for errors of law and will affirm if there are no genuine disputes about any material fact and the moving party is entitled to judgment as a matter of law." *Beneficial Oregon, Inc. v. Bivins*, 313 Or App 275, 277, 496 P3d 1104 (2021) (internal quotation marks omitted); *see also* ORCP 47 C ("The court shall grant the motion if the pleadings, depositions, affidavits, declarations, and admissions on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to prevail as a matter of law."). There is no genuine dispute of material fact "if, based on the record before the court viewed in a manner most favorable to the

---

[1] The trial court entered an order of default against defendant's ex-husband. He has not made an appearance on appeal. We thus refer to Z's mother as defendant in this opinion and we refer to codefendant, defendant's ex-husband, based on his relationship to defendant and Z.

adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." ORCP 47 C; *see also Beneficial Oregon, Inc.*, 313 Or App at 277 (explaining that "the question is whether the evidence is such that all objectively reasonable factfinders would have to find in plaintiff's favor").

## FACTS

We summarize the facts consistent with our standard of review under ORCP 47 C. On June 7, 2018, C visited the house of his friend, Z. Z picked up a .30-30 caliber rifle from the primary bedroom closet. The rifle was loaded. As C entered the bedroom, Z accidentally fired the rifle. The bullet struck and killed C.

Plaintiff initiated this wrongful death action against defendant and her ex-husband. Plaintiff alleged the following in her complaint. (As we explain below, plaintiff's theory of foreseeability evolved from the complaint to summary judgment.) Defendant and her ex-husband both lived in the house at the time of the shooting. They are both Z's parents, caregivers, and legal guardians. Defendant and her ex-husband possessed many firearms that were "loaded, unsecured, and accessible to children in various rooms" in the house. C visited the house on June 6, 2018, and Z and C practiced target shooting with firearms with defendant's ex-husband. C's parents did not know about the target shooting. On June 7, 2018, C and another friend visited Z at the house. Z asked defendant's ex-husband "if they could go shooting again." He said they could only shoot bows. The children went into a bedroom where firearms were laying in a pile near the closet. Z picked up "a loaded Marlin .30-30 lever action rifle," and shot and killed C.

Based on those factual allegations, plaintiff specified several theories of negligent conduct by defendant and her ex-husband:

"a. In causing or allowing loaded firearms to lay easily accessible to young boys in the house;

"b. In failing to discover the loaded firearms on the floor in a bedroom where young boys had access to them;

"c.   In failing to lock, secure, or unload the firearms on the floor where the boys had access to them;

"d.   In failing to supervise 14-year-old [Z] while he was handling a loaded rifle; and

"e.   In failing to provide adequate firearms safety training to [Z], such that he would know how to safely handle the 30-30 lever action rifle."[2]

Plaintiff asserted that "[t]he loaded and unsecured firearms in the residence posed an unreasonable risk of harm to [C], which defendants knew or should have known existed." The boys could not safely "encounter" the "loaded and unsecured firearms" while unsupervised or recognize the danger of loaded and unsecured firearms, because of their youth and relative experience, plaintiff alleged. C suffered emotional distress, imminent fear of death, loss of chance of surviving his injury, and death as a result of defendants' negligence, plaintiff alleged.[3]

Defendant moved for summary judgment on foreseeability. Plaintiff responded. The parties presented the following facts to the trial court on summary judgment, which we describe in the light most favorable to plaintiff, as the nonmoving party. *Robinson*, 332 Or 455. In 2001, defendant bought the house in which the shooting occurred. Also in 2001, defendant inherited approximately 20 firearms from her father, including a .30-30 caliber rifle.[4] Defendant stored the firearms, unloaded, in the primary bedroom closet.

Defendant and her ex-husband divorced in 2003. Defendant continued to live in the house with her ex-husband and their children until 2010, when she moved out. She left the firearms that she had inherited in the primary bedroom

---

[2]  Plaintiff alleged a negligent supervision claim in subsection (d). Plaintiff struck that claim prior to the court's ruling on summary judgment. Although plaintiff alleged that Z was 14 years old at the time of the shooting, the evidence established that Z was 13 at the time. Whether Z was 13 or 14 is immaterial to the issues on appeal.

[3]  Plaintiff struck the loss of chance allegation prior to the court's ruling on summary judgment.

[4]  Plaintiff and defendant disputed in the trial court whether defendant owned the .30-30 rifle that Z mistakenly fired and they continue to do so on appeal. The record included evidence from which a jury could conclude that defendant owned the gun. Thus, under our standard of review, we accept that defendant owned the rifle with which Z accidentally killed C.

closet. Defendant allowed her ex-husband and children to remain in the house rent-free. The children, including Z, had access to the primary bedroom closet. At the time of the shooting, Z often slept in the primary bedroom by himself.

Defendant's ex-husband kept a loaded revolver near his recliner armchair in the living room and stored ammunition in an "ammo can" inside of a dresser drawer. The ammunition included .30-30 rounds. There is no evidence that defendant knew of the loaded revolver or the ammo can.

Defendant visited the home after 2010, occasionally staying the night. A year or two before the shooting, she stopped going inside the house because it was cluttered and disorganized. Defendant also instructed her ex-husband that he and the children could not have visitors at the house. Defendant knew that her ex-husband might nonetheless permit visitors to the house. She had most recently entered the house six months prior to the shooting. She had been on the property, outside the house, one week prior to the shooting.

Defendant knew that Z was interested in hunting and that her ex-husband liked to hunt. Four years prior to the shooting, defendant had supervised Z and his older sister when they shot rifles on the property. Defendant also knew that Z had taken online hunter safety courses.

About one year before the shooting, Z and defendant's ex-husband went elk hunting and took a .30-30 rifle. When they returned, Z placed the .30-30 rifle, still loaded, in the primary bedroom closet. Defendant knew that Z and her ex-husband had gone elk hunting. But the record does not contain evidence from which a juror could infer that defendant knew that Z had placed a loaded rifle in the primary bedroom closet when he returned from hunting with his father.

C and Z were friends. C visited Z at the house. On the day before the shooting, C and Z had been target shooting on the property while supervised by defendant's ex-husband. Defendant did not know of C's visits.

As noted above, defendant moved for summary judgment. In the motion, defendant noted that plaintiff had

alleged a common law negligence theory. Defendant asserted that plaintiff could not establish general foreseeability as a matter of law. Defendant quoted plaintiff's complaint, summarized above, in which plaintiff alleged that "loaded and unsecured firearms" in the house "posed an unreasonable risk of harm to [C], which defendants knew or should have known existed." Defendant argued that plaintiff's complaint rested on the factually incorrect allegations that she lived at the house and that she knew that the house contained loaded and unsecured firearms. She argued, quoting *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987), that the there is no evidence "that any conduct by [defendant] 'unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell' [C] or from which a trier of fact can conclude that [defendant's] conduct was unreasonable in light of that risk."

Plaintiff responded that a jury could conclude from the evidence that the shooting death of C was reasonably foreseeable to defendant. Plaintiff shifted her theory of foreseeability in response to the evidence before the court on summary judgment. Instead of relying on a theory that defendant lived at the house and knew of Z's access to unsecured, loaded firearms, plaintiff relied on defendant's ownership of the house; ownership of the rifle that Z fired to kill C; ability to control the rifle and decision to leave it and other firearms unloaded in the primary bedroom closet; legal custody over Z as Z's parent; and knowledge that her ex-husband could not be trusted to follow her instructions not to have guests on the property. Plaintiff also relied on defendant's awareness that her kids lived in "squalor" in a house that she owned, awareness that Z could access the primary bedroom closet without supervision, and awareness that Z had used firearms at the house previously. It was foreseeable from those actions or omissions, plaintiff argued, that Z would have unsupervised access to an unsecured, loaded firearm, and it was foreseeable that a guest would be shot.

The parties filed additional briefing in which they continued to dispute the application of general foreseeability principles to the facts. Plaintiff did not argue that she had

placed before the court a theory that relied on defendant's special status or duties as Z's mother or the landlord of the house in which Z lived, and she did not cite any case law that analyzes foreseeability under those heightened, special-duty standards.

The trial court granted defendant's motion for summary judgment. The court concluded that "there is no genuine issue of material fact" because "in this particular case, *** the mere ownership of real or personal property, that one is not in possession or control of, does not create an unreasonable and foreseeable risk of harm or a breach of the duty of 'reasonable care' as to the negligence allegations in this case." The trial court entered a limited judgment dismissing plaintiff's case. Plaintiff appeals from that limited judgment.

On appeal, plaintiff argues that "[t]he trial court erred in concluding that there was no genuine factual issue in this case, and that as a matter of law the risk of harm resulting from [p]laintiff's son's access to a loaded firearm was not foreseeable." Plaintiff argues that the trial court mistakenly focused "solely" on defendant's ownership of the house and that the evidence, including defendant's "status as a parent with legal custody" of Z, was sufficient to support a jury finding that the risk that a child would have unsupervised access to loaded firearms was foreseeable to defendant. Plaintiff variously refers to the foreseeable risk of harm as the risks of Z's access to a "loaded firearm," Z's unsupervised access to "firearms and ammunition," or Z's "unsupervised access to firearms." We understand plaintiff's argument to be that the foreseeable risk of harm was the risk of a child's unsupervised access to either a loaded firearm or firearm and ammunition because, under plaintiff's theory, it is foreseeable that a child would accidentally shoot themselves or another person in those circumstances.

## ANALYSIS

A trial court may grant summary judgment only on the grounds asserted by the moving party. *Ricard v. Klamath Falls Forest Estates HOA*, 328 Or App 46, 56, 536 P3d 1013 (2023); *see also Eklof v. Steward*, 360 Or 717, 730-32,

735-36, 385 P3d 1074 (2016) (explaining that the only issues properly before a trial court on summary judgment are the issues raised in the motion for summary judgment on which the moving party contends they are entitled to prevail as a matter of law). When the moving party asserts that it is entitled to summary judgment on a particular ground, the burden shifts to the nonmoving party to provide evidence that creates a genuine dispute of material fact that, if found in the nonmoving party's favor, defeats the moving party's claim that it is entitled to judgment as a matter of law. *Eklof*, 360 Or at 729 (citing *Two Two v. Fujitec America, Inc.*, 355 Or 319, 324, 325 P3d 707 (2014)).

Here, defendant moved for summary judgment on the ground that "[p]laintiff's wrongful death claim fails under a general foreseeability theory."[5] A claim of common law negligence in which the parties do not "invoke a status, a relationship, or a particular standard of conduct that creates, defines or limits a defendant's duty" requires a plaintiff to "plead and prove that the defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff." *Chapman v. Mayfield*, 358 Or 196, 205, 361 P3d 566 (2015) (internal quotation marks omitted). Here, the only issue before the trial court on summary judgment was whether defendant was entitled to summary judgment on the foreseeability element of plaintiff's common-law negligence claim. That is thus the only issue properly before us on appeal.

On appeal, plaintiff relies on case law in which a defendant had a special status or relationship with the plaintiff to buttress her foreseeability argument. In particular, she relies on defendant's status as Z's mother and the owner of the house in which Z lived—essentially Z's landlord—to suggest that defendant owed a heightened duty to protect Z and Z's guests to the house from harm. Defendant argues that plaintiff failed to preserve that argument. Plaintiff replies that she preserved the argument by pointing out in her filings

_____

[5] As noted above, plaintiff had also pleaded a negligent supervision claim and a loss of chance allegation. Defendant moved for summary judgment on that claim and allegation and plaintiff struck the claim and the allegation in her reply to defendant's motion for summary judgment.

on summary judgment that defendant owned the house and maintained control over it and that the parent-child relationship gave defendant the authority to instruct and control Z.

That was insufficient to preserve an argument that defendant owed a heightened duty to protect C—a visitor to the property—from the type of harm he suffered. The parties litigated foreseeability below as general foreseeability, as we summarized above. Plaintiff did not cite any case law about a special duty or suggest that the trial court should not employ the general foreseeability analysis. The trial court would be surprised to learn that plaintiff believes it should have analyzed the case as a special-duty case. *See State v. Skotland*, 372 Or 319, 329, 549 P3d 534 (2024) (explaining that a touchstone of preservation is whether "the trial court [would] be taken aback to find itself reversed *on this issue, for this reason*" (emphasis in original)). Thus, we consider the fact that defendant is Z's mother and owned the house as part of the general foreseeability analysis, as we explain below, but not under a heightened special-duty standard.

The general rule is that foreseeability is a jury question. A "jury is given wide leeway" to decide foreseeability. *Fazzolari*, 303 Or at 17-18 (citing *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 607, 469 P2d 783 (1970)). Foreseeability derives from "blameworthiness in some sense; the actor being regarded as blameworthy if his conduct is, according to community standards, generally considered as creating a danger to persons in the situation in which the plaintiff finds himself." *Stewart*, 255 Or at 608. A jury asks "whether a reasonable person considering the potential harms that might result from [their] conduct would have reasonably expected the injury to occur." *Chapman*, 358 Or at 206 (internal quotation marks omitted). A court may keep the question of foreseeability from a jury "only when it can say that the actor's conduct clearly meets the standard or clearly falls below it." *Scott v. Kesselring*, 370 Or 1, 10, 513 P3d 581 (2022) (internal quotation marks omitted). Cases in which no reasonable factfinder could find the risk foreseeable "'are few and far between and should be identified *ad hoc*.'" *McPherson v. Oregon Dept. of Corrections*, 210 Or App 602,

614, 152 P3d 918 (2007) (quoting *Najjar v. Safeway, Inc.*, 203 Or App 486, 492, 125 P3d 807 (2005)).

A court may grant summary judgment on foreseeability in favor of a defendant when an injury arises from a "concatenation of highly unusual circumstances" or "an extended sequence of improbable chance occurrences," because that makes the "resulting harm unforeseeable as a matter of law." *F. T. v. West Linn-Wilsonville School Dist.*, 318 Or App 692, 702, 509 P3d 655, *rev den*, 370 Or 471 (2022) (internal quotation marks omitted); *see also Fazzolari*, 303 Or at 12 (explaining that foreseeability should be a jury question except for conduct "at the outer margins").

As the Supreme Court recognized in *Fazzolari*, some risks of harm are unforeseeable as a matter of law, even though such cases are rare. For example, in *Buchler v. Oregon Corrections Div.*, 316 Or 499, 516, 853 P2d 798 (1993), the Supreme Court affirmed a trial court order granting summary judgment to the defendant on foreseeability. An adult in custody (AIC) serving a sentence on a felony conviction escaped from a road crew by stealing a transport van using keys left in the van by the crew supervisor. *Id.* at 502. The AIC drove 50 miles and stole a gun from his mother's residence and two days after his escape, shot two people, killing one, near his mother's residence. *Id.* The record lacked evidence that the defendant—the corrections division—knew that the AIC "had previously caused bodily harm to anyone[.]" *Id.* The Supreme Court held that the harm to the plaintiffs was not foreseeable from the defendant's conduct of leaving the keys in the van. *Id.* at 514.

As another example, in *F. T.*, we held that no reasonable jury could find that a school district's conduct created a foreseeable risk that a teacher would sexually abuse a high school student while the teacher was a guest at the student's relative's house. 318 Or App at 705-06. There was evidence that the district knew that the teacher improperly drove alone with students off campus, that he had a drinking problem, and that he had poor classroom performance. But there was "no evidence that the district was aware of any conduct, or any rumors of conduct, on the part of [the

teacher] to suggest that he posed a risk of sexual assault to district students." *Id*.

With that summary of the limits of foreseeability in mind, we apply the law to the facts of this case. We begin by identifying defendant's acts or omissions that allegedly made the type of harm suffered by C foreseeable. *See Scott*, 370 Or at 23 (explaining that "the starting point in the foreseeability inquiry *** as *Fazzolari* instructs" is "the defendant's 'conduct' and the reasonableness of the foreseeable risks that it created"). We focus on plaintiff's evidence "of the injury-producing factual circumstances in the context of her theory of liability[.]" *Piazza v. Kellim*, 360 Or 58, 76, 377 P3d 492 (2016).

As described above, plaintiff alleged that defendant was negligent for (1) causing or allowing loaded firearms to lay easily accessible to young boys in the house; (2) failing to discover the loaded firearms on the floor in a bedroom where young boys had access to them; (3) failing to lock, secure, or unload the firearms on the floor where the boys had access to them; and (4) failing to provide adequate firearms safety training to Z, such that he would know how to safely handle the .30-30 lever action rifle. Plaintiff's theory evolved in response to the evidence produced in discovery and deposition testimony, as summarized above, particularly the uncontested evidence that defendant did not live at the house, was not present at the time of the shooting, and had left only unloaded firearms unsecured in the house. On appeal, we understand plaintiff's foreseeability argument to flow from defendant's act of leaving unloaded firearms in the house where they were accessible to her children and her failure to act to secure the unloaded firearms or otherwise ensure that her children would not have unsupervised access to loaded firearms. From those acts or omissions, plaintiff argues, a jury could conclude that it was reasonably foreseeable to defendant that Z or another child would have unsupervised access to a loaded firearm and would injure someone in a shooting.

We conclude that it was not legally foreseeable from the acts or omissions of defendant that a child would have unsupervised access to a loaded firearm. Z failed to clear

the rifle after a hunting trip with his father, defendant's ex-husband. The ex-husband lived at the house with Z, not defendant. Z returned the loaded rifle to the primary bedroom closet. Z later picked up the rifle believing it was not loaded and, tragically, accidentally shot his friend, C. Looking forward from *defendant's* acts and omissions, those facts present "an extended sequence of improbable chance occurrences." *See F. T.*, 318 Or App at 702 (citing to *McPherson,* 210 Or App at 618). A reasonable person in defendant's position would not have reasonably expected that allowing a child access to unloaded firearms would result in an accidental shooting. An unloaded firearm cannot, of course, be used to shoot someone.

Indeed, the evidence, even in the light most favorable to plaintiff, shows that prior to Z's accidental shooting of C, defendant knew of Z accessing loaded firearms only under adult supervision. There is no evidence that permits an inference that defendant should have known that her ex-husband would not supervise the children while they used loaded firearms. That significantly reduces the foreseeability of a child accessing a loaded firearm without adult supervision. *See F. T.*, 318 Or App at 706 (relying, in part, on the absence of evidence that the defendant school district "was aware of any conduct, or any rumors of conduct, on the part of [the teacher] to suggest that he posed a risk of sexual assault to district students").

The evidence, viewed in the light most favorable to the plaintiff, supports an inference that there was ammunition on the property and possibly in the house. The record contains no evidence, however, that defendant was aware that the children had unsupervised access to ammunition prior to the accidental shooting. And defendant's knowledge about the house's disorganized and cluttered condition does not permit a reasonable inference that defendant knew or should have known that the children would have unsupervised access to ammunition. *See Buchler*, 316 Or at 514 (holding that "[a]s a matter of law, the harm that actually occurred did not result from any risk of harm to others that was unreasonably created by leaving the keys in the van").

Plaintiff argues that the fact that defendant owned the house and was Z's parent placed a duty on defendant

to learn how firearms and ammunition were stored in the house and whether the children had unsupervised access to firearms and ammunition. Plaintiff also argues that defendant had a duty to protect tenants and invitees from reasonably foreseeable risks. Plaintiff points out that in *McPherson*, 210 Or App at 617-18, we held that a jury could find that a landlord should have foreseen the risk that a person could force entry into a building in an apartment complex and assault a tenant or invitee.

   *McPherson* does not aid plaintiff. In *McPherson*, we analyzed foreseeability using a heightened standard based on the defendants' status as the plaintiff's landlord. *Id*. at 609-12. Here, plaintiff has not preserved a theory that requires a heightened standard, as we explained above. Additionally, the evidence in *McPherson* permitted a jury to find that the category of harm suffered by the plaintiffs was foreseeable to the defendants. *Id*. at 617-18. In *McPherson*, an AIC who had escaped custody assaulted tenants (the plaintiffs) in a laundry shed at an apartment complex owned by the defendants. As we explained, based on the evidence in that case, "a rational juror could find that [the] defendants knew or should have known that their [apartment] complex in general was attractive to criminals, that criminals frequented the area, and that the laundry shed in particular was ill-equipped to provide tenants with protection from them." *Id*. at 618. And the harm that befell the plaintiffs was foreseeable: "a criminal observed a vulnerable target and foreseeably took advantage of it." *Id*. The record in this case does not contain analogous evidence of foreseeability.

   In sum, plaintiff argues that defendant's conduct created a reasonably foreseeable risk that a child would have unsupervised access to a loaded firearm or unsupervised access to a firearm and ammunition.[6] In the light most favorable to plaintiff, a jury could conclude that defendant's acts or omissions were that she owned the house in which

_____

[6] The parties have not presented us with a question about how to define the risk of harm. *See Piazza*, 360 Or at 76 (recognizing, the "centrality—in determining whether a triable issue has been established with respect to foreseeability—of the plaintiff's description of the injury-producing factual circumstances in the context of her theory of liability"). Thus, we assume, for the purposes of this appeal, that plaintiff could prevail if the risk that a child would have unsupervised access a loaded firearm was foreseeable.

the shooting occurred, is Z's mother, and when she moved out of the house in 2010, she left behind the gun used in the shooting, unloaded, where Z could access it. The record lacks evidence from which a reasonable jury could infer that defendant knew that Z had unsupervised access to a loaded firearm or knew that Z had unsupervised access to a firearm and ammunition. To the contrary, the uncontested evidence is that defendant knew of Z using loaded firearms only while under adult supervision. From those facts, it was not foreseeable to defendant, as a matter of law, that Z would have unsupervised access to a loaded gun. The tragic accident was, viewed from defendant's acts and omissions, "an extended sequence of improbable chance occurrences." *F. T.*, 318 Or App at 702 (citing *McPherson,* 210 Or App at 618). For the reasons explained above, the trial court did not err when it granted defendant's motion for summary judgment based on its conclusion that there was no issue of material fact and that plaintiff's common-law negligence claim failed as a matter of law on the foreseeability element.

Affirmed.